### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT SAVANNAH.

### JANUARY TERM, 1853.

Present—JOSEPH H. LUMPKIN, ⎫
HIRAM WARNER, ⎬ Judges.
EUGENIUS A. NISBET. ⎭

---

No. 61.—George W. Persons, plaintiff in error, *vs.* Gabriel
Jones, defendant.

[1.] A party who transfers a note upon sufficient consideration, by delivery,
knowing it to be usurious, to one who is ignorant of the defect, is compel-
lable to repay the money he has received; and the cause of action is com-
plete at the instant of time the fraudulent contract is consummated.

[2.] Fraud is a good reply to the plea of the Statute of Limitations, where
the party has been ignorant of his cause of action, and that ignorance has
resulted, from the character of the transaction itself, or the conduct of the
defendant.

[3.] Although the record of another case, between the holder and the maker
of a note, be given in evidence, the statement in the plea of usury in the
former action, that the plaintiff knew of the usury, when he received the
note, is no evidence of such knowledge, and inadmissible as proof for that
purpose, in the present suit.

Case, &c., in Columbia Superior Court. Tried before Judge
Starns. September Term, 1852.

This was an action on the case, for a deceit. The alleged

deceit was in trading to plaintiff a note tainted with usury, and concealing the fact. It appeared, on the trial, that plaintiff brought suit on the note, and upon a plea of usury, judgment was obtained against him. An exemplification of the proceedings in that cause, was in evidence. The errors assigned in this case, arose upon the charge of the Court.

The counsel for the plaintiff asked the Court to charge that the action did not accrue to plaintiff, until the judgment against him in Monroe Court.

That if the action did accrue before that time, the Statute of Limitations did not begin to run until plaintiff had discovered the fraud, or might have discovered it.

That the portion of the plea of L., S. Persons, in the case in Monroe Inferior Court, namely: " The said plaintiff, knowing said note to be usurious, as aforesaid," was no evidence against the plaintiff, to show his knowledge of the usury.

The Court then charged the Jury as follows :

" If this had been an action of warranty, the Court might possibly have felt authorized to charge that the Statute did not begin to run until the judgment in Monroe County, but that was an action in *tort*, for the alleged frauds of defendant, and the causes of action, must have accrued either at the time of the fraud or the discovery of it, and that the Statute would begin to run at one of these points, will be subsequently considered; that in this case the Statute must be held to have run from the discovery of the fraud, or from the time when the plaintiff might have, with ordinary care and attention, reasonably detected it; that the Jury must, from all the circumstances of the case in evidence, determine whether the plaintiff did discover the fraud, or whether he might, with reasonable care and attention, have detected it; that for the purposes of this case, he would hold—though distinguished Jurists had differed, and our own Supreme Court had reviewed their opinion and forebore to decide the question—that cases of fraud form an implied exception to the Statute, to be acted on by the Courts of Law and Equity, according to their respective jurisdictions.

That the portion of the plea referred to, was not, *per se*, evi-

Persons *vs.* Jones.

dence of the knowledge of the plaintiff of the fraud, but in determining when the plaintiff had such knowledge or information, if ever, or might have had such knowledge or information, with care and attention, and thence determining when the Statute commenced to run. · The Jury were authorized to look into the plea in question, as part of the proceeding in Monroe County Inferior Court, and taking it in connection with that proceeding, and with all the circumstances of the case, to say, whether or not the plaintiff had such information of the fraud, if it had been committed, or should have been, by such proceeding, put upon such information, and at what time ; on which charge error has been assigned.

E. H. POTTLE, counsel for the plaintiff in error, submitted the following points, and relied upon the following authorities :

*First*—A party who transfers a promissory note for value, warrants, by implication, that it is genuine, and free from any defect which would make it worthless. *Winter vs. Bullock,* 6 *Geo. Rep.*

*Second*—His liability to the transferrer, and the extent of that liability, can only be ascertained by a judgment against the transferrees, and from that time *alone,* the cause of action accrues, and the Statute begins to run. *Cowper et al. executors, vs. Godmond, Clerk,*9 *Bing.* 23. *E. C. L. Rep.* 452. *Walker vs. Bradley,* 3 *Pick.* 261. *Shearman vs. Sally Adkins, administratrix,* 4 *Pick.* 282. *Angel on Lim.* pages 110, 111. *Miller vs. Eskridge,* 1 *Iredell's Law Reports,* 147. *Jones, executor, vs. Lightfoot,* 10 *Alabama,* 18.

*Third*—When a plea of usury has been filed and sworn to, according to the Statute, the defendant is only required to verify the facts as to the usury. *Cobb's New Digest.*

A. J. MILLER, for the defendant in error, submits the following points and authorities :

*First*—The record of the proceedings in Monroe Inferior Court, having been put in evidence, the plea of L. S. Persons being a part of that record, was evidence.

*Second*—The cause of action accrued when the alleged fraud was committed; that is to say, when the note was sold and delivered. 1 *Sandford's S. C. Rep.* 98. 3 *Iredell's Rep.* 481. 20 *Johns. Rep.* 33.

*Third*—The Statute of Limitations is not suspended at Law, by fraud. 20 *Johns. Rep.* 33. 10 *Ohio Rep.* 469. 3 *Iredell's Rep.* 481. 9 *Vermont Rep.* 110. *Angell on Limitation,* 193. 6 *Georgia Rep.* 21, 31, 33.

*Fourth*—If it be, it must be such fraud as conceals the knowledge of it from the party defrauded. *Angell on Lim.* 189.

*Fifth*—If the party defrauded had reasonable time to discover the fraud, he will be presumed to have had seasonable notice of it. 9 *Greenleaf's Rep.* 131. *Angell on Limitations,* 195, 200.

*Sixth*—The pleadings do not allege, in relation to the note in evidence, when the fraud was discovered, nor that the discovery was within four years preceding the action. 5 *Eng. Com. Law Rep.* 403. 9 *Ibid,* 47. 5 *Alabama Rep.* 90, 101. 6 *Georgia Rep.* 35. 4 *Leigh's Rep.* 474.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was an action on the case for a deceit, founded upon the following facts: Gabriel Jones, the defendant, as administrator of Joseph Barnes, deceased, held a note given originally by one Lewis S. Persons and others, to his intestate, and renewed to him after his appointment as administrator. This note was transferred to George W. Persons, the plaintiff, by delivery, in 1839. G. W. Persons held the note till 1845, when suit was brought by him against the makers, in the Inferior Court of Monroe County. They filed the plea of usury, and verified it in terms of the Statute, and the plaintiff failing to appear and testify, after the notice to do so, a verdict was rendered for the defendants, upon the facts set forth in their plea, which the law makes evidence in their behalf. George W. Persons, several years afterwards, commenced this action against Jones, to recover back, in the way of damages, the money paid

him on the note, who relies for his protection, upon the Statute of Limitations.

The errors complained of, are, for the refusal of the Court to charge as requested, and to the charge as given. They are threefold, and I will notice them in their order.

[1.] Counsel for the plaintiff asked the Court to instruct the Jury that the right of action did not accrue to the plaintiff until the rendition of the judgment against him, in the former suit, in Monroe County, against the makers of the note.

Was the party entitled to this charge? We think not. On the contrary, we are clear that the cause of action accrued instantly upon the transfer of the usurious paper ; and that the plaintiff might have sued the next day, and recovered back the money paid for it. Mr. *Chitty* states the law to be, and such is the doctrine of all the elementary writers, that if a note is transferred for any sufficient consideration, by a party knowing it to be of nŏ value, and the transferree be not aware of the fact, the former would, in all cases, be compellable to re-pay the money he had received. *9th edition of Chitty on Bills,* (1840,) *p.* 244, 247. The note in this case was a nullity, to the extent that it was infected with usury. It was a contract made in violation of the express Statute of the State ; and the cause of action was consequently complete at the same moment of time that the transaction was made. Every man transferring a negotiable security, warrants its collectibility, so far as its soundness—not its solvency—is concerned.

[2.] In an action on the case for a deceit, is it a sufficient answer to the Statute of Limitations, that the plaintiff was ignorant of his cause of action, until within four years next before the suit was brought? Upon this point, the Court below held that "Cases of fraud form an implied exception to the Statute, to be acted on in Courts, both of Law and Equity, according to their respective jurisdictions." Such had been the intimation of this Court in several previous cases, and such is now its deliberate decision.

We forbear to go at length into the argument, *pro* and *con*, having done so fully, in *Conyers vs. Kenan and Hand,* 4 *Geo.*

*Rep.* 308. In Chancery, where the Statute of Limitations is pleadable, as well as at Law, it is a well settled rule that the Statute is no plea to a bill charging a fraud, if the bill be filed within a prescribed time, after the discovery of the fraud. 3 *P. Williams,* 143. 2 *Dall.* 364. 1 *Dane's Digest,* 625, and the authorities there cited. Why, in this State, should there be any difference between Chancery and the Common Law, in the construction and application of the Statute?

The case of *Bree vs. Holbeck,* (1 *Doug.* 656,) was *assumpsit* for £2,000, had and received. The defendant pleaded the Statute of Limitations. The plaintiff replied that Holbeck, holding a mortgage made to his intestate, and which was found among his papers, sold it to the plaintiff, falsely affirming the mortgage to be good; when, in fact, there was no such mortgage—it having been a forgery by the intestate, and that the action was brought within six years from the discovery of the fraud. To this replication there was a demurrer and joinder. Lord *Mansfield,* in delivering the opinion of the Court, says: "*There may be cases which fraud will take out of the Statute of Limitations.* But here, everything alleged in the replication, may be true, without any fraud on the part of the defendant. He finds a mortgage among the papers of the intestate, and parts with it, *bona fide,* as a marketable commodity. If he had discovered the forgery, and then got rid of the deed as a true security, the case would have been very different."

Here, then, we have a distinct recognition of the doctrine on which the plaintiff in this case relies, by Lord *Mansfield;* and the reasoning of the Judge, and the case which he puts, applies closely and strongly to the one at bar; for this was not a legal, but an actual fraud. The *scienter* is proven. Mr. Jones, after he became possessed of the note, as administrator, renewed it himself, at the same illegal rate of interest which had been charged by his intestate in his lifetime.

The same principle is to be found in *Espinasse's Digest,* 151; *Comyn's Digest, Action upon the case in assumpsit, H.* 5, and in *Moseley's Reports,* 18, 244, 245.

In this country, there is a conflict of authority, upon this sub-

ject. In New York, and some of the other States, the rule has been, that the Statute began to run the moment the plaintiff's cause of action was perfect; and that it was immaterial whether the plaintiff's ignorance of his rights, were the result of the fraudulent concealment or fraudulent representation of defendant or not. *Troup vs. The Executors of Smith,* 20 *Johns.* 33. *Cothout vs. Thompson, Ibid,* 277. *Leonard vs. Pitney,* 5 *Wend.* 30. *Smith vs. Bishop,* 9 *Vermont,* 110.

In this last case, *Phelps,* J. in delivering the opinion of the Court, insists that this is the more equitable doctrine, apart from the express terms of the Statute itself. He says, and very properly, that the object of the Act is to impose a perpetual seal upon stale controversies, and prohibit their agitation, at a period when the usual means of eliciting truth are not at hand, but are removed forever; when right cannot be ascertained, and justice must be administered at random ; that if we make the protection of the Statute to depend upon the plaintiff's knowledge of his injury, we require the defendant to perpetuate the evidence of that knowledge, during all time, and we expose him, when this and other evidence necessary for his defence, shall have passed from him, to fresh litigation, with no other guide to a correct adjudication than the shreds of evidence, which accident or a more subtle and sagacious adversary may have preserved.

We admit the force of these remarks.

On the other hand, in Massachusetts and other States, it is held that a fraudulent concealment by the defendant, that a cause of action has accrued to the plaintiff, is a good replication to a plea of the Statute of Limitations. Such was the unanimous opinion of the Court, in *The First Massachusetts Turnpike Comp. vs. Joseph Field and others,* 3 *Massachusetts Rep.* 101, a case decided after a full hearing, and more in accordance with the principles of natural justice.

*Parsons,* Chief Justice, commenting upon the Statute of Limitations, observed that it was a beneficial Statute, when applied according to its true principles; but that it could not be considered as intending to protect any man in the quiet enjoyment of the fruits of a fraudulent execution of a contract, if the

action be commenced within proper time after the discovery of the fraud. The delay in bringing the suit, is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued, until the plaintiff could obtain the knowledge that he had a cause of action. If this knowledge is fraudulently concealed by the defendant, the Courts would violate a sound rule of Law, if they permitted the defendant to avail himself of his own fraud.

*Sedgwick*, J. expressed himself very strongly. He said he should have been very unhappy to have found that the defendants could have availed themselves of the plea of the Statute of Limitations. He was satisfied, upon investigation, that they could not. There was nowhere anything to be found, which gave the least countenance to it. On principle, he said, there could be but one opinion. In this, the moral sense of all mankind must concur.

As stated in *Conyers vs. Kenan & Hand*, this question was thoroughly discussed in *Sherwood vs. Sutton*, (5 *Mason*, 163,) and the conclusion at which Judge *Story* arrived was, that concealment of the fraud by the defendant, was a good replication to the plea of the Statute of Limitations. He does not view this as an exception, out of the words of the Statute; but he considers the fraud as continuing, during the whole period of its concealment, " thus knitting it to the original wrong ;" and he states that more than a century ago, the very point was submitted by the *House of Lords*, to all the Judges, and that no trace can be found of any adverse opinion given by them, notwithstanding the construction which he contends for, had been put upon the Statute of *James*, from the date of its enactment.

In affirming, then, the judgment of the Circuit Court, upon this ground, it is a consolation to know, that if we err, it is in company with *Mansfield, and Parsons, and Story*; and *on the side of right.*

[3.] The third and last error complained of is the ruling of the Superior Court, that the allegation in the defendant's plea to the first action in Monroe County, to the effect that the plaintiff

Persons *vs.* Jones.

had notice of the usury in the note, at the time of the transfer, was evidence. ·

We hold that the document referred to was not admissible as testimony for any purpose, nor to any extent whatever. It was impertinent to have inserted it in the plea. It made no part of the issue. If the note was tainted with usury, the maker was entitled to be relieved, whether the defect was known to the holder or not. This statement in the answer, although inserted by the pleader, was not sworn to by the defendant. The oath appended to the plea, is to the facts relative to the usury only. The plaintiff in that action had no opportunity of contradicting the statement, either by counter-pleading or proof. Under these circumstances, we cannot permit him to be prejudiced by this averment.

If we could find sufficient proof in the record to sustain this verdict, apart from this illegal testimony, we might not send the case back ; but upon examination, it will be discovered that there is not a tittle of evidence besides this, to support the finding. On the contrary, there is strong proof the other way. Lewis S. Persons himself, the defendant in the other suit, who is supposed to have made this statement in his plea, was examined as a witness, and swears that George W. Persons had no knowledge of this usury. When George W. Persons was defeated in Monroe, he wrote to a friend to see Gabriel Jones, and endeavored to settle the case with him, without further litigation, declaring that he had no knowledge of the usury, when he traded for the note ; and when this statement is communicated to Gabriel, he admits it to be true.

Upon this ground, therefore, we are compelled to reverse the judgment, and to order a new trial.