PRINTUP BROTHERS & COMPANY *vs.* SMITH *et al.*, survivors.

In cases of malicious prosecution on the criminal side of the court, the right of action does not accrue until the prosecution terminates; and so, by analogy, the rule should be the same in malicious prosecutions on the civil side of the court, in respect to the time when the right of action accrues and the statute begins to run, except in cases of seizure of personalty under execution, where the litigation is protracted by a claim interposed by the person whose property is seized.   In that case, the right of action would accrue whenever the personalty was seized, and the statute would then begin to run, and four years after that time would bar the action.

(*a.*) This case differs in its facts from those in 58 *Ga.*, 195, and 12 *Ga.*, 371.

January 6, 1885.

Statute of Limitations.    Malicious Prosecution.    Actions.
Before Judge LAWSON.    Floyd Superior Court.    September Term, 1884.

Printup Brothers & Company brought their action against Henry H. Smith and S. P. Smith, surviving partners of ,S. P. Smith, Son & Brother, on March 2, 1880. The body of the declaration was as follows:

" S. P. Smith, Son & Brother have injured and damaged your petitioners in the sum of six thousand ($6,000) dollars, for that, heretofore, to-wit: On the 19th and 22d day of July, 1875, and at divers days and times thereafter, to-wit, on the ———— day of ———— 1875, the said defendants, contriving and maliciously intending to injure petitioners, did then and there, to-wit, in the county and state aforesaid, did wrongfully and maliciously and without right, after having caused attachments to be issued against a certain company or corporation, to-wit, the Cornwall Iron Works Company, returnable to the January term, 1876, of the superior court of said county, knowingly and wilfully caused said attachments to be levied on ninety-six (96) tons of pig-iron, the same belonging to and in the possession of plaintiffs, and caused garnishments to issue against plaintiffs, and against Noble Brothers & Company, who were indebted to plaintiffs in the sum of two thousand dollars ($2,000), or other large sum, thereby hindering and delaying the sale of said iron, and preventing the payment of said indebtedness by said Noble Brothers & Company to plaintiffs, and causing plaintiffs to have to file and institute claims in said court for said iron, and to give bond and security to dissolve said garnishments, to the injury and damage of your petitioners two thousand ($2,000) dollars, or other large sum, for moneys expended in and about the defending and prosecuting said claims to said iron and defending and setting aside said garnishments, and in the decline of said iron in its market value after the said levies thereon, to-wit, ten dollars ($10.00) per ton.

" And the said defendants have further injured and damaged your petitioners in the sum aforesaid, for that heretofore, to-wit, on the 22d day of July, 1875, and at divers days and times thereafter, the said defendants, contriving and maliciously-intending to injure petitioners, did then and there, to-wit, in the county and state aforesaid, did wrongfully and maliciously and without probable cause, and in there own proper names, file in the superior court of Floyd county, Georgia, on the equity side of said court, a certain bill against your petitioners and James M. Elliott and Berry & Company and one W. S. McElwain, as joint defendants, in which said bill and the amendments thereto, filed at various times, they, the said S. P. Smith, Son

& Brother, charged that your petitioners were partners with the said W. S. McElwain in running and operating the Cornwall Iron Works in the state of Alabama, and were liable with said McElwain for the debts of said iron works, and that petitioners, with the parties aforesaid, had wrongfully, fraudulently and violently taken possession of three hundred (300) tons of iron which belonged to said S. P. Smith, Son & Brother, knowing at the time that said iron belonged to, and had been sold and delivered to the said S. P. Smith, Son & Brother, said iron being of the value of ——— dollars; that petitioners had combined, colluded, and fraudulently conspired with said McElwain, and thereby procured the said S. P. Smith, Son & Brother to furnish goods, money and supplies to the said McElwain for the purpose of making iron for the said S. P. Smith, Son & Brother, which said iron thus produced was artfully and fraudulently turned over to the said Printup Brothers & Company, for the purpose of defeating and defrauding them, the said S. P. Smith, Son & Brother; that petitioners, well knowing that the said W. S. McElwain had sold and delivered to them, the said S. P. Smith, Son & Brother, three hundred (300) tons of iron, and that they had paid for the same and had advanced them the sum of eight thousand dollars ($8,000), and that said iron was the property of the said S. P. Smith, Son & Brother, wrongfully seized said iron, and were about to ship the same, or some part thereof, out of the state, or otherwise convert the same to their use; and that said Printup Brothers & Company artfully and wrongfully represented to the said S. P. Smith, Son & Brother that the said W. S. McElwain was worthy of credit, and would comply with his contracts, and, by their artful and deceitful representations, procured the said S. P. Smith, Son & Brother to extend to said McElwain credit, and to sell to him goods to the amount of eight thousand ($8,000) dollars or other large sum; and that said W. S. McElwain was insolvent. And your petitioners aver that all of said charges and other charges in said bill contained were wholly untrue, and that said bill was sued out and said attachments sued out by defendants, and levied on said iron, and said levies on said iron, and said garnishments in said bill prosecuted against said petitioners without just or probable grounds, and maliciously, for the purpose of injuring petitioners in their business and credit and respectability.

"And your petitioners aver that said S. P. Smith, Son & Brother, in the prosecution of their said bill aforesaid, wrongfully and maliciously procured an injunction, restraining and enjoining them from removing or selling ninety-six (96) tons of pig iron; and that, during the pendency of said injunction, and while the same was in force, the said iron declined in price the sum of ten dollars per ton, to the damage of your petitioners the sum of nine hundred and sixty ($960) dollars.

"And your petitioners aver that, by reason of the wrongful and malicious filing and prosecution of said bill and the several amendments

thereto, they have sustained damage in the sum of four thousand ($4,000) dollars, or other large sum, and that your petitioners were compelled to pay out and expend in the defence thereof and in their payment of attorneys' fees, costs, fees for taking testimony and traveling expenses, the sum of twelve hundred ($1,200) dollars, or other large sum.

"Said bill and amendments thereto, and all the charges therein contained, and said injunction, as well as said levies by said attachments on said iron and said garnishments, were prosecuted and continued to be prosecuted by defendants in said superior court until —— day of October, 1879, when the same and all the issues thereon were all, each and every of the same, found, decreed and determined against the said defendants.

"And your petitioners aver that, by reason of the wrongful and malicious filing and prosecution of said levies on said attachments and said garnishments, and of said bill, and the various amendments thereto, and the injunction, as aforesaid, which said bill, claims and garnishments were finally tried and determined on the —— day of October, 1879, as aforesaid, they were injured and damaged the sum of six thousand ($6,000) dollars."

To this declaration defendants demurred, on the following grounds :

(1.) Because the declaration set forth no cause of action.

(2.) Because it was multifarious.

(3.) That said declaration is not sufficient in law, in that it does not set forth specifically the amount of damage that accrued to plaintiffs by reason of said attachments being levied and said garnishments being served, nor the amount of damage arising from the delay in the sale of said iron and the delay in the payment of the money held up under said garnishment.

(4.) In that said declaration does not show the amount of damage sustained by plaintiffs in having to file and institute claims for said iron and to give bond to dissolve said garnishments.

(5.) Because no right of action has accrued to the plaintiffs, by reason of the prosecution of the several claims in said plaintiffs' declaration mentioned, for their expense of litigation therein.

(6.) Because said declaration failed to show when dam-

age accrued to the plaintiffs by reason of the decline in said iron attached—whether the said decline occurred between the date of the attachment and the institution of the claims, or whether said decline occurred thereafter.

(7.) Because said declaration fails to show what damage accrued to the plaintiffs' business and credit and reputation by reason of the suing out of said attachment and the levying on said iron and the serving of said garnishments and prosecuting said bill.

(8.) Because said declaration fails to show specially and specifically what sums were paid for attorneys' fees, what sums for costs, what sums for fees for taking testimony and for traveling expenses.

(9.) Because said declaration shows upon its face that the plaintiffs' several causes of action, as in said declaration set out, accrued to them more than four years prior to the institution of this suit.

The court sustained the demurrer and dismissed the case and plaintiffs excepted.

DABNEY & FOUCHE; DANIEL S. PRINTUP, for plaintiffs in error.

UNDERWOOD & ROWELL; L. A. DEAN; HARRISON & PEEPLES, for defendants, cited, on statute of limitations, Code, §§3058, 3059, 3060, 3026; 58 *Ga.*, 195; 12 *Id.*, 371; 72 *Id.*, 83; 8 Ohio St. R., p. 548; 18 Wis., 355; Wood Lim., 369, 383; Chitty's Plead., Vol. 2, p. 552; 57 Cal., 431; 71 *Ga.*, 744; Cooley Torts, 187, 188 and notes; Ang. Lim., 71; Ld. Raym., 380; 16 Pick., 453; 1 Com. Dig., 344; 19 Wend., 421; 14 Am. Dec., 599, 600; 38 *Id.*, 264; 36 *Id.*, 107; Big. Lead. Cas., 184, 187 *et seq.;* 2 Greenleaf, 452.

JACKSON, Chief Justice.

This is an action brought by plaintiffs in error against defendants in error for a malicious prosecution of certain attachments and a bill in aid of them, enjoining plaintiffs

v 74-11

in error from the prosecution of their claims in the attach-
ment cases, which litigation was finally terminated ad-
versely to defendants in error in October, 1879, and this
action was brought in the spring of 1880.   The declaration,
fully set out by the reporter, was demurred to, as reported
also, and the demurrer sustained and the action dismissed,
·on the ground, as certified in the bill of exceptions, that
it was barred by the statute of limitations.

By our statute in respect to actions for malicious prose-
·cutions on the criminal side of the court, the right of action
·does not accrue until the prosecution terminates.   So it
would seem should be the rule in malicious prosecutions
·of cases on the civil side of the court, in respect to the
·time when the right of action accrues and the statute be-
gins to run, unless in cases of seizure of personalty under
·execution, where the litigation is protracted by the claim
interposed by the person whose personalty was seized.
'There the right of action would accrue whensoever the
personalty was seized, and the statute would then begin
·to run, and four years after that time would bar the action.
_Baker vs. Boozer_, 58 _Ga._, 195.   So in _Persons vs. Jones_,
12 _Ga._, 371, cited in _Baker vs. Boozer_, it was held that
·one who knowingly transfers a usurious note to another,
ignorant of the usury, is liable to repay; and the right of
.action accrues the moment that the contract is consum-
·mated.

Doubtless the court below put its judgment in this case
·on that in 58th _supra_.

Here, as there, there was a seizure of the personalty—
·iron in this case—by attachment; in that case, by levy of
·execution; in both cases, claims were put in, and there, as
here, an examination of the original record of file in the
clerk's office shows that the damages claimed were for ex-
penses, counsel fees, as well as the injury and loss to the
personalty.   There is, however, a clear distinction in the
cases in this, that the injunction sued out falsely and ma-
liciously, as the declaration alleges, suspended all action

by these plaintiffs in error, suspended their claims, enjoined their interference with the iron, and kept matters pending until October, 1879, and then the case was decided and terminated, and this suit was brought to the next term.

It will be observed that in *Baker vs. Boozer*, it was held that the claim, being a new suit brought by the party there suing for damage, could not suspend or change the statute of limitations, but here a court of equity intervenes and draws all within its grasp. It is doubtful to what extent the injunction did not stay the right to bring trespass about the seizure of the iron, while the court of chancery had it before it for adjudication. Moreover, garnishments were here issued and served to the detriment of the business of plaintiffs in error as bankers, and to the damage of their credit, as is alleged.

Taking these distinctions between this case and *Baker vs. Boozer*, and regarding this as a case for malicious prosecution in consecutive acts of seizure of personalty by attachments, garnishment proceedings, and interference by the harsh writ of injunction, procured falsely and maliciously, as the declaration, admitted by the demurrer to be true, makes it, and applying the analogy of the time when the right of action for malicious criminal prosecutions accrues, to-wit, the end of the prosecution, to civil proceedings, so without probable cause, and malicious, as this declaration makes this case to be, we hold that the right of action was only complete in this case when the cause, in its totality, terminated, to-wit, in October, 1879, and not in 1875, when the iron was first attached. Therefore we think the action not barred, and the judgment dismissing it erroneous.

Such huge litigation as this was, if maliciously begun and prosecuted so long without good cause, must create much expenditure and loss, difficult to be calculated or estimated until the whole prosecution ends, and the rule fixed for rights of action to accrue for criminal prosecutions maliciously and without probable cause would seem proper

for rights of action to accrue for malicious civil prosecu-
tions, and for the commencement of the running of the
statute of limitations in those cases too.

Let it be understood that this ruling is on the declara-
tion, which the demurrer admits to be true.    When the
case is tried on issues of fact, in regard to malice, probable
cause, damage, etc., all will depend on the evidence and
the law applicable thereto.

Judgment reversed.