## FULTON GROCERY COMPANY *v.* MADDOX *et al.*

1. A petition alleging that named defendants conspired to injure the plaintiff, a corporation, by causing one of the former to execute a fraudulent mortgage in its name upon its property, with the purpose of having the same foreclosed and levied with a view to obtaining possession thereof at sheriff's sale, that the fraudulent scheme was so far carried into effect as to obtain the mortgage, have the same foreclosed, cause execution issued thereon to be levied, and the plaintiff's place of business closed, that the plaintiff had stopped the illegal proceedings by giving bond, and that the entire proceeding was carried on maliciously and without probable cause, but failing to allege that the foreclosure proceedings were at an end, was fatally defective for lack of the latter allegation, and was properly dismissed on a general demurrer.

2. A petition containing such allegations as those above indicated can not be upheld as one setting forth a cause of action in trespass.

Argued June 15, — Decided July 11, 1900.

Action for damages. Before Judge Reid. City court of Atlanta. November term, 1899.

*Frank A. Arnold* and *Thomas L. Bishop*, for plaintiff.
*C. D. Maddox* and *J. L. Key*, for defendants.

COBB, J. This was a suit brought by the Fulton Grocery Company, a corporation, against J. J. & J. E. Maddox, L. B. Jackson, Kelly Brothers, a firm composed of Edgar S. and Kendrick K. Kelly, and Mrs. Ida Humphries. The petition, though loosely drawn and somewhat vague in its allegations, made substantially the following case: The defendants entered into a malicious conspiracy for the purpose of breaking up petitioner's business, in order that they might obtain possession of its stock

of goods.   The defendant Jackson, who was the moving spirit
in the conspiracy, together with the defendants Mrs. Humphries
and Kelly Brothers, fraudulently and illegally and with the
knowledge that the property they were seeking to obtain be-
longed to petitioner, maliciously and illegally persuaded and in-
duced the defendant Mrs. Humphries to execute and deliver to
J. J. & J. E. Maddox a fraudulent mortgage upon the property
of petitioner, though at the time of the execution of the mort-
gage all of the defendants well knew that Mrs. Humphries had
no authority to execute the same, she being only a small stock-
holder in the plaintiff company.   Defendants also well knew
that the property sought to be mortgaged did not belong to Mrs.
Humphries but to petitioner, and that petitioner was not in-
debted either to J. J. & J. E. Maddox or to Kelly Brothers in
any sum whatever.   The scheme and purpose of the defend-
ants was expressed by Jackson to Mrs. Humphries in the follow-
ing language:   "You can execute this mortgage, and they,"
meaning your petitioner, "can not make bond, and we will get
possession of their stock by selling the same at sheriff's sale."
The defendants collusively, maliciously, and without probable
cause conspired in the execution and foreclosure of the mort-
gage for the purpose of obtaining possession of petitioner's stock
of goods, to its great injury and damage.   Pursuant to this con-
spiracy, and with the knowledge of each and every one of the
defendants, a mortgage fi. fa. was issued by the clerk of the su-
perior court of Fulton county, to be levied on the stock of goods
covered by the mortgage.   The fi. fa. was levied; petitioner's
store was closed and remained closed the greater part of one day
until petitioner, with great difficulty, obtained bond and stopped
the illegal proceedings.   The defendants maliciously had the
fi. fa. levied for the purpose of breaking up, injuring and
damaging petitioner's business, and it was a part of the orig-
inal scheme to obtain its goods without paying for them.   Dam-
ages are laid in the sum of $10,000.   The mortgage referred
to in the petition was attached thereto as an exhibit.   This
mortgage recites that the Fulton Grocery Company is indebted
to J. J. & J. E. Maddox on a promissory note for $107.76, and
to Kelly Brothers on a promissory note for $138.09; that to se-
cure the payment of these notes a mortgage was created in favor

of the payees thereof on the stock of goods and merchandise (describing it) and the business of the Fulton Grocery Company. The mortgage was signed: "Fulton Grocery Company, a firm composed of W. J. Shockley, & Mrs. Ida Humphries, per Mrs. Ida Humphries." The court sustained a general demurrer to the petition, and to this judgment the plaintiff excepted.

Counsel for the plaintiff in error contends that the petition set forth a cause of action in trespass, and that therefore the plaintiff's right of action was complete the moment its goods were seized, and for this reason the court erred in sustaining a general demurrer to the petition. Counsel for the defendant in error contends that if the facts alleged in the petition give to the plaintiff any right of action at all, it is one for the malicious prosecution of a civil suit, and that the petition was fatally defective for the reason that it failed to allege that the suit claimed to have been maliciously carried on without probable cause had terminated in favor of the plaintiff before the filing of the present action, and that therefore the court rightly dismissed the case on a general demurrer filed to the petition. The case made by the petition is simply this: The defendants have obtained a mortgage upon the property of the plaintiff, signed by one who is a stockholder in the company, and they have sought to enforce this mortgage by a proper foreclosure proceeding. The plaintiff says that the person who signed this mortgage in behalf of the company had no authority to execute the same. The foreclosure of a chattel mortgage obtained under such circumstances is nothing more nor less than a civil suit, and the consequences which result to the plaintiff from bringing such a suit will be the same as would have flowed from the bringing of any other civil action. Before the plaintiff would be liable to the defendant for any damages growing out of the institution of such foreclosure proceeding, it must appear that it was instituted maliciously and without probable cause. In the case of *Porter* v. *Johnson*, 96 *Ga.* 148, Chief Justice Simmons, in referring to the subject now under discussion, says: "So far as I know, no respectable court in this country has ever held that an action will lie against a person for having brought an action against another, unless he did so with malice and without probable cause. If the law were otherwise,

the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action; and so on *ad infinitum*. This court is fully committed to the doctrine that such an action is not maintainable without proof of malice and want of probable cause." It is also there stated that this doctrine was first announced in *Sledge* v. *McLaren*, 29 *Ga.* 64, and has been repeatedly recognized in other cases since. The opinion in the *Porter* case deals with many, if not all, of the former decisions of the court relating to this subject, and some apparent conflicts in the same are reconciled. The rule there announced may now be considered as settled in this State. Applying this rule to the petition in the present case, did the same set forth a cause of action? The petition alleges clearly and distinctly that the foreclosure proceeding was instituted maliciously and without probable cause, and therefore, so far as these elements are concerned, there is a cause of action set forth.

The petition does not, however, allege that the foreclosure proceedings had terminated in favor of the plaintiff in the present case. The petition does allege that the "petitioner obtained bond and stopped the illegal proceedings that they had instituted against the plaintiff company." An execution issued upon the foreclosure of a chattel mortgage may be stopped by giving a bond in two ways, first by an affidavit of illegality filed by the defendant in execution, and, second, by a claim to the property filed by one who is not a party to the execution. It is true that the defendant in execution may, without filing an affidavit of illegality, give to the sheriff a bond to have the property forthcoming at the time and place of sale, but such a forthcoming bond does not "stop" the proceeding but merely obligates the defendant to have the property on hand to be sold when the day of sale arrives. As the allegation is that the plaintiff obtained bond and stopped the illegal proceedings, but one conclusion can be reached, and that is that the defendant filed an affidavit of illegality, and that the bond given was the one required in such cases. Of course the defendant in execution could not interpose a claim to the property. *Wynn* v. *Ir-*

*vine*, 109 *Ga.* 287.    The effect of the filing of an affidavit of illegality to the foreclosure of a chattel mortgage would be to convert what would otherwise be final process into mesne process, and the proceeding, though in the beginning one simply to foreclose a chattel mortgage, is, by the filing of the affidavit of illegality, converted into a trial of various issues which the defendant may therein raise.  Such being the case, it can not be determined from the allegations in the present case whether the foreclosure suit was terminated, as there is no allegation that the issues raised by the affidavit of illegality have ever been passed on. The question arises, therefore, whether or not in such a case it is incumbent upon the plaintiff to allege distinctly that the suit had terminated in his favor before the bringing of the action for malicious prosecution.    The code declares that the prosecution must be ended before the right of action accrues. Civil Code, § 3850.    It is contended, however, that this applies only to criminal prosecutions.    In the case of *Marable* v. *Mayer*, 78 *Ga.* 710, which was an action to recover damages alleged to have been sustained by reason of the foreclosure of mortgages and levying of executions, issued thereon, on the plaintiff's property, it was held that a declaration which failed to allege that the suit on which the action was founded had terminated in favor of the plaintiff set forth no cause of action, and the court committed no error in dismissing the same on demurrer. See also *Wilcox* v. *McKenzie*, 75 *Ga.* 73; *Printup* v. *Smith*, 74 *Ga.* 157; *Hyfield* v. *Bass Furnace Company*, 89 *Ga.* 827.   Treating the case as one for malicious prosecution of a civil action, the petition was fatally defective for want of the averment that the suit upon which it was founded had terminated favorably to the plaintiff in the present case, and the court did not err in sustaining a general demurrer thereto.    •

The petition can not be sustained as one setting up a cause of action in trespass for wrongfully seizing the goods of the plaintiff.  Counsel for the plaintiff in error contends that the suit is maintainable as one for trespass, under the decisions rendered in *Baker* v. *Boozer*, 58 *Ga.* 195, *Printup* v. *Smith*, supra, and *Holton* v. *Taylor*, 80 *Ga.* 508.   In the cases of *Baker* v. *Boozer* and *Holton* v. *Taylor* it was held that where an execution was levied upon personal property which did not belong

to the defendant in execution, such levy was a trespass. In the former case it was held that the right of action accrued at the date of the seizure, and in the latter that the plaintiff under whose direction the levy was made, as well as the levying officer, was liable to the defendant for whatever actual damages he sustained growing out of the levy. There is such a clear distinction between a wrongful seizure of the property of a person under a process against him, and the seizure of the property of a person against whom no process was ever issued, that the distinction between those cases and the present one will readily appear from the simple recital of the facts. Where the property of a person is seized under a valid process issued against him, as has been seen, malice, want of probable cause, and termination of the proceeding in favor of the defendant in the process must all be alleged and proved to support an action for damages against the persons causing the process to be issued and levied. Where property of a person against whom no process has ever issued is seized, such seizure, followed by actual damages to the owner of the property, will give a right of action. In *Printup* v. *Smith* it was held that the rule, that in suits for malicious prosecutions on the criminal side of the court the right of action does not arise until the action is ended, was by analogy applicable to suits brought for such prosecutions on the civil side of the court, except in cases of the seizure of personal property under execution where a claim is interposed by the person whose property is seized. An examination of the facts of that case will show that there were seizures of personalty by attachments, to which claims were interposed, and that there were garnishment proceedings, and the granting of an injunction, all alleged to have been procured wrongfully and maliciously. It was held that the suit was really one for the malicious prosecution of a civil action, and therefore the cause of action was not complete until the claim cases and other proceedings were at an end.

We do not think that the petition could be maintained as one setting forth a cause of action in trespass. The language used in the petition clearly indicates that the purpose of the pleader was to set forth a cause of action for malicious prosecution of a civil suit, and we think that if he has any cause of action at all,

growing out of the wrongful acts complained of, it would be of this character; and the present case fails for want of the essential averments above referred to.

Judgment affirmed. All the Justices concurring.