Agnes **RODENBUR**, Appellant,

v.

Helen J. **KAUFMANN** et al., Appellees.

No. 16921.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 19, 1963.

Decided May 10, 1963.

680

Mr. Albert J. Ahern, Jr., Washington, D. C., for appellant.

Mr. Justin L. Edgerton, Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., John F. Mahoney, Jr., and R. Harrison Pledger, Jr., Washington, D. C., were on the brief, for appellees.

Before FAHY, DANAHER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge.

This appellant was lessee of an apartment on the fourth floor of a 58-unit apartment house. The premises are owned by the appellees Kaufmann and Dreyfuss, and managed by the corporate appellee. On June 6, 1960, the appellant, then about 66 years of age, slipped and fell on a foreign substance, a clear oil or grease resembling vegetable oil, in a ground level common passageway in the apartment building. She unsuccessfully

sought damages in her District Court suit. She here contends (1) that the trial judge, sitting without a jury, erred in entering an adverse judgment, and (2) that a judge holding motions court earlier had erred in striking her demand for a jury trial.

The appellees counter that we need not reach the second point for the findings of the trial judge indicate that he would have been bound to direct a verdict for the appellees if a jury trial had been held. In particular the appellees rely upon the following finding:

"8. The Court finds that the plaintiff has not shown by a preponderance of the evidence how the spot of oil on which plaintiff slipped came to be on the floor or when it came to be on the floor. The Court is unable to make any finding as to the exact nature of the oil, where it came from or how long it had been there prior to the plaintiff's accident. For the Court to attempt to determine any one of these three things would require the Court to indulge in sheer speculation."

The trial judge seems to have had in mind our opinion in Brodsky v. Safeway Stores [1] where a store customer slipped on some green vegetable. We said: "There was no evidence as to the quantity on the floor, how it got there, or how long it had been there." We concluded that there was no evidence that the appellee had negligently (1) created the alleged condition or (2) permitted it to continue. Noting, as is true here, that a storekeeper is not an insurer of the safety of his customers, we added that if there "had been evidence that the condition complained of had continued for a substantial time there might have been a question for the jury."

We were asked to say that the Brodsky opinion must control our disposition of Safeway Stores, Inc. v. Preston,[2] a later

1. 80 U.S.App.D.C. 301, 152 F.2d 677 (1945).

2. 106 U.S.App.D.C. 114, 269 F.2d 781 (1959); cf. Kelly v. Great Atlantic and

Pacific Tea Company, 109 U.S.App.D.C. 181, 284 F.2d 610 (1960), where the court divided after relating the evidence to the allegations upon which the appel-

"slip and fall" case. We explained the Brodsky holding but deemed it not to apply, for in the Preston record we saw evidence from which the jury might have concluded that an employee of the store-owner had negligently created the condition either in failing to sweep up the vegetable substance or in dropping it even as he sought to keep the floor clean.

In Lord v. Lencshire House, Ltd.,[3] we collected pertinent cases touching the duty of the owner of an apartment house who retains exclusive control of its common approaches. We read our opinions as stating the rule that the landlord is bound, after notice, or a reasonable opportunity for notice, to exercise ordinary care so that persons lawfully using such portions of the structure may be safeguarded against conditions, whether permanent or temporary, which make them dangerous to the tenants or their guests. Thus, where a sudden change of the weather had not afforded a landlord reasonable opportunity after notice to correct dangerous conditions, there was no liability as a matter of law.[4] In the Simpson case, Chief Judge Groner explained as to common approaches controlled by the landlord, that the latter "owed a duty to those persons lawfully using them to exercise ordinary care, after notice or reasonable opportunity for notice, to keep them free from either temporary or permanent conditions of danger."

On the other hand, he pointed out that where notice of the existence of dangerous conditions had been established, it was for the jury to say whether reasonable care had been thereafter exercised to make the entrances reasonably safe.[5] He was writing against the background from which had emerged the rule announced in Pessagno v. Euclid Inv. Co.[6] There this court ruled that in the circumstances shown, there was a question

for the jury under proper instructions from the court to determine whether or not what was done constituted reasonable care. The landlord in light of the facts, was bound "to be reasonably alert that persons lawfully using the property should be safeguarded against danger which could, in the exercise of ordinary care, be foreseen and prevented." [7]

Bearing in mind such considerations in landlord-tenant cases, we turn now to further specific facts which become material in the instant case. Appellees tell us on brief, with support in the testimony for their statement:

"The hallway in question 'is in the basement of the building at ground level with two entrances on Clydesdale Place and serviced by the elevator and runs east and west with trash and garbage chutes at the east end thereof. It is commonly and frequently used by all tenants, visitors, guests and trades people coming in and out of the building. In fact, it is more frequently used than the main lobby entrance on the floor above * * *.' "

On each of the four floors, it further appears, there were two trash or garbage cans which were collected by a janitor and taken down to that basement hallway, and thence along the passageway to a large receptacle. Collections from each floor were made daily except Sundays.

Thus over weekends, unless the tenants wished to leave their garbage on their residence floors, the tenants brought their garbage in bags or other containers to the basement level, there to be deposited in the large receptacle, provided for that purpose. Monday noon, the appellant, in the presence of the janitor fell. She slipped, he testified on "small drops of grease"; not "solid like a white lard" but clear, "more like a

---

lant had relied. The dissenting judge concluded that in any event a jury question had been presented.

3. 106 U.S.App.D.C. 328, 331, 272 F.2d 557, 560 (1959).

4. C. W. Simpson Co. v. Langley, 76 U.S. App.D.C. 365, 131 F.2d 869 (1942).

5. Ibid.

6. 72 App.D.C. 141, 112 F.2d 577 (1940).

7. Id. at 143, 112 F.2d at 579.

vegetable oil." After taking the injured appellant to her apartment, he returned to the scene and cleaned up the spots, using soap and water. "It was vegetable oil and you couldn't see it unless you were actually looking for it."

The janitor did not wash the floor on Monday mornings after a weekend without janitorial services. He mopped the passageway only once a week, on Fridays. He swept the floor about 8:30 on Monday morning, but made no inspection thereafter. In light of all such circumstances, we turn now to certain specific findings by the trial judge. They read:

"4. * * *

"Frequently the tenants, when carrying their garbage and trash down the east-west basement corridor would allow garbage, including grease, to fall on the floor of the corridor and this fact was well known to the [appellees] through their agent, Golder. No instructions were ever issued to the tenants by the management to refrain from carrying garbage through the east-west basement corridor.

"5. The east-west basement hallway was mopped each Friday and was swept with a push-broom on Monday, Wednesday and Friday. On June 6, 1960, which was a Monday, Golder swept the basement hallway between 8:15 and 8:30 a. m. The hallway was not cleaned in any way nor was it inspected for garbage between 8:30 a. m. and the time of the accident on June 6, 1960.

"6. Whenever Golder noticed garbage in the basement corridor he would clean it up but no effort was made to keep a close watch on the hallway to enable the management to quickly remove garbage that might be spilled on the floor by the tenants, although it was known to the defendant that the garbage was frequently so spilled. Defendant took no special precaution to protect tenants and others using the common hallway from the effects of garbage spilled in the hallway."

■ Such findings as to the continuing conditions are amply supported by the record. There was evidence that the dropping of garbage or refuse in the passageway was a common occurrence. One witness told the janitor that "it was a hazard and it was dangerous." Another had seen material dropped by tenants "and it would be slippery under foot or greasy or something like that." The trial judge properly found that the facts as to such conditions were "well known" to the landlords. Where the traffic in and frequent use of the passageway had so continued, we need only reiterate that the landlords were "under an obligation to use reasonable diligence to keep" the passageway in a safe condition.[8]

Yet there seems to have been little "diligence." There was no planned inspection program. Owner Dreyfuss testified he had not accompanied the co-owner to inspect the common way "since 1939." He had not himself inspected in June, 1960. There was no resident manager. The maintenance of the premises simply had been left to the janitor. Still, the appellees would have us insulate them from actual notice of conditions despite the "reasonable opportunity for notice" which, this court has said, in the exercise of ordinary care might have enabled the landlords "to be reasonably alert"[9] in keeping the premises free from temporary, if not permanent, conditions of danger.[10]

8. Kay v. Cain, 81 U.S.App.D.C. 24, 25, 154 F.2d 305, 306 (1946).

9. Pessagno v. Euclid Inv. Co., supra note 6, 72 App.D.C. at 143, 112 F.2d at 579.

10. Compare S. S. Kresge Co. v. Rankin, 149 F.2d 934 (4 Cir. 1945), where our Judge Groner sat with Judges Soper and Dobie in affirming Rankin v. S. S. Kresge Co., 59 F.Supp. 613 (N.D.W.Va.1945). The opinion set forth facts deemed sufficient to present a jury question in a "slip and fall" situation in many respects similar to that presented here.

In Solon Service v. Cook, 96 U.S.App. D.C. 25, 223 F.2d 317 (1955), a land-

The trier made no findings as to cracks or depressions in the floor although the appellant had testified her heel had caught in a hole when or as she slipped.

There was no finding as to the possible impact of provisions of the Housing Regulations [11]: for example, portions of an apartment house not under the exclusive control of the tenant "shall be kept in a clean, safe and sanitary condition," (§ 2602); with floors and other walking surfaces "clean and free of dirt, dust, filth, garbage, human or animal wastes, litter, refuse, or any other insanitary matter," (§ 2602.1); with daily collections of garbage or refuse (§ 2610); and "free from combustible refuse or debris, accumulated grease or oil spillage," (§ 3206.1).

We have been asked not to reach the appellant's contention that she was erroneously denied a jury trial. The basis for that position of the appellees is, as previously noticed, that they would have been entitled to a directed verdict. They so submitted the case to us, largely because of finding No. 8, supra. But under the long established rule governing the direction of a verdict, the appellant must be accorded every favorable intendment fairly to be derived from the evidence and the legitimate inferences reasonably to be deduced therefrom.[12] Thus tested in light of the applicable law as discussed, and because of the mentioned deficiencies in the findings in view of findings 4, 5 and 6, supra,[13] the record does not justify our saying that judgment for the appellees was correctly entered.

We are bound accordingly to consider the appellant's contention that a motions judge erroneously stuck her demand for a jury trial.[14] The appellees' motion to strike was based upon a clause in the lease which read:

"It is mutually agreed by and between the Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Tenant's use or occupancy of said premises, and/or any claim of injury or damage."

We have not had occasion to consider the extent to which a contract [15] to waive so important a right should be given effect.[16] Courts will "indulge every reasonable presumption against waiver" [17] of a jury trial. Without pausing to explore the many nuances inherent in varying situations, we observe simply that a jury trial lawfully may be waived, both before and after a given cause of action shall arise. For example, a party

lord had allowed Solon Service to install a washing machine in an apartment laundry room used as a common passageway. We saw a jury question as to the reasonableness of the concessionaire's conduct respecting possible danger from an overflowing machine so placed and operated as described.

11. Various such regulations were relied upon at trial. And see Whetzel v. Jess Fisher Management Co., 108 U.S.App.D.C. 385, 282 F.2d 943 (1960); National Bank of Washington v. Dixon, 112 U.S.App.D.C. 183, 301 F.2d 507 (1961).

12. Machanic v. Storey, 115 U.S.App.D.C. —— n. 3, 317 F.2d 151 (March 21, 1963).

13. The trier specifically found that there was no contributory negligence.

14. Fed.R.Civ.P. 38(b).

15. In Kay v. Cain, supra note 8, we expressed doubt on public policy grounds as to the validity of a clause which would exempt a landlord from liability under certain circumstances. And see Gladden v. Walker & Dunlop, 83 U.S.App.D.C. 224, 168 F.2d 321 (1948).

16. It is certainly so that language purporting to establish exculpation must be unmistakably clear and free from ambiguity. Maiatico v. Hot Shoppes, Inc., 109 U.S.App.D.C. 310, 287 F.2d 349 (1961).

17. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937); Beacon Theatres v. Westover, 359 U.S. 500, 510, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

may waive a jury trial by inaction,[18] or by and through his counsel.[19] In some circumstances a jury trial, even after waiver, may be ordered by the court.[20] Parties, at least in situations where summary procedure is clearly to be desired, may in advance contract to waive a trial by jury.[21]

Granting that in some cases the parties may before a cause of action arises validly agree to waive a jury trial, we turn to the language of the lease in question. Such ambiguity as might be said to arise from the position of the clause "and/or any claim of injury or damage" may readily be dispelled when the text is considered in its entirety. The parties clearly were treating of "matters" in unnamed as well as specified respects arising out of or connected with the lease and the "premises" actually demised.

This case did not involve terms or conditions of the lease, or covenants, or right to rent or possession, or any other such interest. The clause, strictly construed as it must be, did not bar a jury trial as to rights which the tenant might have against the landlords unless issues with respect thereto arose out of or were in some way connected with the lease of her apartment. Such is the plain meaning of the language.

We are fortified in our interpretation by the reasoning in Levy v. New York Majestic Corporation.[22] There as in our case, a tenant was injured in a common passageway. Before the court was a clause, identical with that presented here. A trial judge had denied the defendant's motion to strike the case from the jury calendar. In affirming, the court said:

"A clause purporting to waive the right to trial by jury must be strictly construed against the landlord who draws and proffers the lease containing such a clause. Any person lawfully in defendant's premises, who need not necessarily have been a tenant, could have used the stairway where this accident occurred; and could recover damages if injured due to the landlord's negligence. Reading the waiver clause narrowly, as it must be, it cannot be held that an action brought by reason of an accident occurring on a common stairway arises out of the lease or the plaintiffs' occupancy of the premises."[23]

There was error in striking the appellant's demand for a jury trial.

Reversed and remanded for further proceedings consistent herewith.

18. Fed.R.Civ.P. 38(d); May v. Melvin, 78 U.S.App.D.C. 368, 141 F.2d 22 (1944); Kass v. Baskin, 82 U.S.App.D.C. 385, 164 F.2d 513 (1947) and cases cited.

19. Fed.R.Civ.P. 39(a); and see Bass v. Hoagland, 172 F.2d 205, 209 (5 Cir.), cert. denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949).

20. Fed.R.Civ.P. 39; United Press Associations v. Charles, 245 F.2d 21, 27 (9 Cir.), cert. denied, 354 U.S. 925, 77 S.Ct. 1378, 1 L.Ed.2d 1435 (1957).

21. Bank of Columbia v. Okely, 17 U.S. (4 Wheat.) 235, 243, 4 L.Ed. 559 (1819); and see 5 Moore, Federal Practice ¶ 38.-46 (2d ed. 1951).

22. 3 A.D.2d 477, 161 N.Y.S.2d 943 (1957).

23. 161 N.Y.S.2d 944–945.