ANALYTICAL SYSTEMS, INC., Plaintiff,

v.

ITT COMMERCIAL FINANCE CORP., f/k/a ITT Diversified Credit Corp., Defendant.

Civ. A. No. C86–0044A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 22, 1986.

Kirby Loftin Turnage, Jr., Mark B. Wessman, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., for plaintiff.

Olive Elizabeth Bell, Lord, Bissell & Brook, Franklin Ross Nix, Alston & Bird, Atlanta, Ga., for defendant.

## ORDER

FORRESTER, District Judge.

This action is before the court on a motion for partial summary judgment and a motion for reconsideration filed by plaintiff Analytical Systems, Inc. (ASI), as well as a motion for summary judgment filed by de-

fendant ITT Commercial Finance Corporation (ITT). Defendant ITT has also moved for leave to submit supplemental briefs in opposition to plaintiff ASI's motion for partial summary judgment and motion for reconsideration. These motions for leave to submit supplemental briefs are GRANTED. All briefs filed by both parties have been considered in passing upon the various substantive motions.

Before ruling upon the merits of the various motions, the court wishes to make clear that *ad hominem* arguments by counsel for both parties will not be countenanced. The attacks upon counsel for defendant ITT contained in plaintiff ASI's Brief Opposing ITT's Summary Judgment Motion were unnecessary and unbecoming. *See* Brief of October 7, 1986, at 3–4 & 12. More to the point, the repeated invocation of Rule 11 of the *Federal Rules of Civil Procedure* for the purpose of casting doubt upon the integrity of opposing counsel is improper. *See id.* at 4, 7, 8, 19 & 24. If counsel for ASI concludes that there are good grounds to support a Rule 11 motion, then let such motion be filed. Otherwise, citation to Rule 11 may well constitute interposition of an argument for an "improper purpose, such as to harass [one's opponent]." Fed.R.Civ.P. 11. Any future pleading containing *ad hominem* attacks will be struck unless accompanied by a motion under Rule 11 and, if ethical considerations are raised, a certificate that the conduct has been reported to the state bar. Further, counsel should understand that such an attack obscures rather than promotes the merits of their client's case.

## I. CROSS MOTIONS FOR SUMMARY JUDGMENT.

Plaintiff ASI has moved for summary judgment on its trespass, conversion and wrongful levy counts, while ITT has moved for summary judgment on these counts as well as all other counts not previously dismissed voluntarily by plaintiff ASI. The legal arguments urged in favor of summary judgment on these various counts will be addressed following a review of the facts.

### A. *Statement of Facts.*[1]

Plaintiff ASI retails computer equipment and software. ASI entered into a security agreement with defendant ITT as a condition of receiving inventory financing from ITT. This agreement, termed "Agreement for Wholesale Financing" (Financing Agreement), was dated June 29, 1984. It conveyed a security interest in "all inventory" of ASI. During the same time period as the ASI/ITT agreement, ASI obtained a $4.5 million line of credit from Trust Company Bank of Atlanta, Georgia ("Trust Company"). ASI granted Trust Company a security interest in substantially all of its assets other than the inventory financed by ITT.

In order to define the respective security interests retained by ITT and Trust Company, ASI, ITT and Trust Company entered into an "Agreement Among Creditors" on September 10, 1984. This agreement modified the Financing Agreement as follows:

> [N]otwithstanding any provision to the contrary in the Financing Agreement, the only security interest conveyed by Analytical to ITT shall be a purchase money security interest covering only the inventory of Analytical that is financed by ITT pursuant to the Financing Agreement and not any proceeds thereof in any accounts generated by the sale or lease thereof....

Trust Company retained a security interest in all other assets of ASI.[2]

---

**1.** These facts are derived from a review of the pleadings, affidavits and depositions of record, including the depositions of Mr. Morris Bell, Hon. Howard Cook, Mr. J Vaughn Curtis, Mr. Ronald C. Daniel, Mr. James E. Dunning, Mr. Richard B. Herzog, Ms. Rochelle Leonard, Mr. Richard B. Odom, Mr. Al Safwat, Mr. George Shill, Ms. Julie Southworth, and Mr. A. Kenneth Williamson.

**2.** ASI and ITT dispute the meaning of the purchase money security interest granted ITT. ITT asserts that it includes all inventory ever financed by ITT, including inventory under paid invoices. This issue has not been fully briefed by the parties and need not be resolved for the purposes of ruling on this motion.

It appears that the differences between the parties began in November of 1985 when defendant ITT declined to increase ASI's line of credit. Because a $750,000 line of credit had been exhausted, ITT ceased financing ASI inventory in December of 1985. At about the same time, ASI began to miss its scheduled payments on indebtedness represented by invoices for computer equipment and software held by ITT. These circumstances prompted ITT to appraise the inventory of ASI financed by ITT for which ASI had not fully paid. That inventory taken in December of 1985 revealed approximately $750,000 in ITT-financed inventory on open invoices.

ASI was unable to keep current with scheduled payments during the month of December 1985 and on into January of 1986. As of January 6, 1986, ASI was indebted to ITT in the amount of approximately $757,425.70. In a last minute effort to salvage its relationship with ITT, ASI officers proposed that ITT buy out the security interest held by Trust Company Bank. ASI officers represented that such an arrangement would result in the priority position for ITT in approximately three million dollars worth of ASI inventory.

ITT representatives met and tentatively decided to reject this proposal and to seek repossession of the ASI inventory in which they had a security interest. Nevertheless, prior to actually taking legal action, ITT continued to discuss the feasibility of this proposal. In fact, on the morning of January 7, 1986, ITT representatives conducted an informal and highly imprecise check of the ASI inventory, ostensibly for the purpose of evaluating the buy-out proposal. That inventory check resulted in an approximation that ASI inventory was actually worth something in the neighborhood of two million rather than three million dollars.

At the same time as the discussions regarding the buy-out proposal were taking place, ITT representatives were meeting and making the final decision to repossess their collateral. They discussed the problem of identifying the collateral they had financed. It is undisputed that they did not have serial numbers for a majority of the serialized inventory, though they did have invoices with model numbers of the ITT-financed inventory. There is evidence that some ITT officers knew that retailers such as ASI received packing lists containing the serial numbers when inventory is shipped to them. In any event, it is undisputed that no officer or employer of ITT made any effort to inquire as to the ability of ASI to identify separately any ITT-financed inventory. Had anyone connected with ITT done so, they would have learned that ASI had the capability of retrieving from their office computers a list of serial numbers representing ITT-financed inventory under open invoices still within the ASI warehouse.

Despite the foregoing identification problems, ITT decided to go ahead with repossession efforts on January 7, 1986. They did so without any information specifically identifying ITT-financed inventory. Indeed, they proceeded without reference even to the model numbers of ITT-financed inventory. Relying upon the theory that the inventory financed by ITT was so commingled with inventory financed by others that it was impossible to identify, ITT determined that it would repossess computer equipment and software in the possession of ASI which was manufactured by those manufacturers whose products ITT had financed in the past. Indeed, there is some evidence that counsel for ITT advised his client of the potential liability which they might incur if they proceeded to repossess inventory which they had not financed. According to ITT counsel, he was told to proceed in any event in obtaining a writ covering all inventory in ASI's possession.

Whatever the truth of the communications between ITT and its counsel, ITT did file a complaint and Petition for Writ of Immediate Possession with the State Court of Gwinnett County on the afternoon of January 7, 1986. A complaint, verified by both ITT counsel and an ITT officer, alleged that ITT had an interest in "all inventory" of ASI despite their admittedly limited security interest in inventory financed by ITT. The State Court of Gwinnett County subsequently issued a Writ of Im-

mediate Possession on that afternoon covering "all inventory of the defendant."

ITT officers, counsel and a deputy sheriff of Gwinnett County levied upon the writ on the evening of January 7, 1986. They were told by counsel for ASI that the attempted levy was upon property which they had not financed. Nevertheless, they proceeded to levy upon all inventory manufactured by those manufacturers whose products they had financed for ASI. There is testimony that during the course of this levy the president of ASI, Mr. James E. Dunning, cooperated fully with the levy, even to the extent of pointing out models to be repossessed and commenting that it would all be worked out later. While Mr. Dunning does not recall making such statements, he does admit that he cooperated with the levy because he had no other choice.

When the results of the levy were finally sorted out, ITT had seized $2,003,900.00 worth of inventory. Only $251,601.00 of this inventory had been financed by ITT under open invoices, $193,363.00 worth of which was serialized. If all ITT inventory, including inventory representing invoices paid by ASI, is considered, then the maximum dollar amount of inventory seized by ITT to which ITT had a colorable claim was $358,338.01.

### B. *Conclusions of Law.*

#### 1. Trespass.

█ ASI has alleged that the seizure of its inventory in the aforementioned manner amounts to a trespass for which ITT should be held liable. *See* O.C.G.A. § 51–10–1 & –2. Although the unlawful deprivation of that inventory to which ITT had no colorable claim would give rise to a trespass action had the inventory been taken by self-help repossession, the fact that it was taken pursuant to judicial process renders trespass an inappropriate remedy for the following reasons.

In the case of *Fulton Grocery Company v. Maddox*, 111 Ga. 260, 36 S.E. 647 (1900), it was alleged that the defendants had obtained a mortgage upon the property of the plaintiff by fraud and then foreclosed upon such property. The plaintiff pled that such action had been taken maliciously and without probable cause. The Georgia Supreme Court observed that this petition would not state a cause of action for malicious prosecution in view of the fact that it was lacking the necessary allegation that the foreclosure proceeding upon which the cause of action was based had terminated favorably to the plaintiff. *Id.* at 264, 36 S.E. 647. The court then turned its attention to an argument by plaintiff that the suit could be maintained as one for trespass. *Id.* Reviewing authority in which the trespass could be maintained under certain circumstances for a wrongful levy, the court observed:

> There is such a clear distinction between a wrongful seizure of the property of a person under process against him, and the seizure of the property of a person against whom no process was ever issued, that the distinction between those cases and the present one will readily appear from the simple recitation of the facts. Where the property of a person is seized under a valid process issued against him, as has been seen, malice, want of probable cause, and termination of the proceedings in favor of the defendant in the process must all be alleged and proved to support an action for damages against the person causing the process to be issued and levied. Where property of a person against whom no process has ever issued is seized, such seizure, followed by actual damages to the owner of the property, will give a right of action.

*Id.* at 265, 36 S.E. 647. The court concluded that if plaintiff had any cause of action at all arising out of the alleged wrongful levy, then it would be in the nature of an action for malicious use of process. *Id.* at 265–66, 36 S.E. 647. In other words, the court effectively distinguished "an action for trespass from an action for malicious use of legal process." *Wilson v. Dunaway*, 112 Ga.App. 241, 242, 144 S.E.2d 542 (1965); *see also Rice v. Lewis*, 217 Ga. 7, 8, 120 S.E.2d 615 (1961).

Of course, the common law action for malicious use of process has recently been

**1474**

redefined by the Georgia Supreme Court. *See Yost v. Torok*, 256 Ga. 92, 344 S.E.2d 414 (1986). Nevertheless, it is still a tort aimed at addressing allegations of damage incurred by reason of an abuse of the judicial process. *Id.* at 96, 344 S.E.2d 414. For this reason, the court concludes that the distinction drawn in the *Fulton Grocery* case continues to have validity. That is, if a plaintiff is deprived of property because the defendant levied upon his property under a writ issued against another, then an action for trespass will still lie without reference to any requirement that the use of the judicial process be proven unjustifiable. However, if a plaintiff complains that a defendant seized his goods under a writ issued against the plaintiff by wrongfully manipulating the judicial process, then he must make out a claim under *Yost.*

Plaintiff ASI seeks to avoid the implication of this rationale by arguing that the process issued against it was void or invalid. Under the distinction drawn by the Georgia Supreme Court in the *Fulton Grocery* case, it is only when the plaintiff suffers by reason of valid process issued against him that he may not recover under simple allegations of trespass. *Fulton Grocery Company*, 111 Ga. at 265, 36 S.E. 647. This raises the question of what is valid process. The jurisprudence of Georgia does not admit of many answers to this question in the context of a writ of possession. It is clear that process pursuant to such a writ would be void if there existed a nonamendable defect. *Cf. C.E. Morgan Building Products, Inc. v. Safe–Lite Manufacturing, Inc.*, 244 Ga. 475, 260 S.E.2d 870 (1979) (failure to verify petition for writ of possession held an amendable defect which does not render process void). Yet, there are no allegations of such defects or irregularities in the proceedings. ITT followed strictly the statutory prerequisites to the issuance of the writ. *See* O.C.G.A. § 44–14–261 to –263.

Case law involving the analogous circumstances of a writ of possession issued pursuant to a judgment provides further guidance to the question of valid or void process. In a case in which a writ of posses-

sion was awarded pursuant to a default judgment, the Georgia Court of Appeals observed that the judgment underlying the writ was not void merely because it granted a writ of possession on property in which the defendant had no security interest. *Butler v. Home Furnishing Company*, 163 Ga.App. 825, 296 S.E.2d 121 (1982). The court went on to write that "there is no contention that the court issuing the writ of possession was without jurisdiction over the subject matter or the person of the appellant. Assuming, arguendo, that there is any merit to appellant's claim that the earlier judgment was erroneous, there nevertheless exists no basis for contending that the default judgment was void and, thus, a 'nullity from the beginning.'" *Id.* at 826, 296 S.E.2d 121. While the *Butler* case is distinguishable on its facts to the extent that it involved an attempted collateral attack upon a final judgment, the court's observation of what renders a judicial act void is instructive. If a court has personal jurisdiction and subject matter jurisdiction, then it cannot be claimed that its acts are void or otherwise invalid *ab initio.*

■ There is no allegation that the State Court of Gwinnett County lacked the requisite personal jurisdiction to issue a writ directed against ASI, a business with a warehouse in Gwinnett County. Consequently, ASI's argument must rest upon the absence of subject matter jurisdiction by the State Court of Gwinnett County. ASI makes the argument that such jurisdiction was lacking because the court could not issue a writ directed to inventory in which ITT had no security interest. *See* Brief of October 7, 1986, at 6. While the statutory provision under which ITT was authorized to petition for a writ of immediate possession does state that "[a]ny person seeking to foreclose any interest in personal property arising out of a commercial transaction ... may seek [such a writ]," O.C.G.A. § 44–14–261, the absence of such a security interest in a portion of the property levied upon does not deprive the state court of jurisdiction over the subject matter of the complaint and petition,

namely the foreclosure of an alleged security interest. Subject matter jurisdiction is not dependent upon the accuracy or truthfulness of the allegations of a particular litigant. Rather, it is dependent upon the power granted the court to hear the class of cases to which a particular case belongs. *Hopkins v. Hopkins*, 237 Ga. 845, 846, 229 S.E.2d 751 (1976). It is undisputed that the State Court of Gwinnett County had jurisdiction over complaints and petitions for writs of immediate possession. *See* O.C.G.A. § 15–7–4(2). Because the state court had the subject matter jurisdiction to issue the statutory writ of immediate possession, the misrepresentation to the state court judge of the actual extent of the security interest which ITT had in ASI inventory would at best render his decision erroneous. *Cf. Butler*, 163 Ga.App. at 825, 296 S.E.2d 121.[3]

For the foregoing reasons, ASI's motion for partial summary judgment with respect to trespass is DENIED. ITT's cross motion for summary judgment with respect to trespass is GRANTED.

### 2. Conversion.

■ ASI has also alleged that the act of levying upon property in which ITT had no security interest constituted a conversion. Again, the simple definition of conversion would cover such conduct. In order to state an action for conversion, "an act of dominion over the personal property of another inconsistent with his rights or an unauthorized appropriation must be shown." *Kornegay v. Thompson*, 157 Ga. App. 558, 559–60, 278 S.E.2d 140 (1981). Although the act of dispossessing ASI of inventory in which ITT had no possessory or ownership interest whatsoever would amount to a conversion had ITT appropriated the inventory pursuant to self-help repossession, the fact that appropriation was accomplished by way of valid judicial process complicates matters. It has long been the law in Georgia "that possession acquired fairly under legal process, is not a wrongful conversion." *Smith v. Kershaw*,

1 Ga. 259, 261 (1846). For example, where one acquires property in an action for bail trover by putting up a forthcoming bond, its possession is said to be authorized by law and acquired by legal process. *Id.* This case law suggests the distinction described above when dealing with the question of whether simple allegations of trespass will state a cause of action where the trespass occurred by virtue of valid legal process issued against the plaintiff. The same analysis logically applies to allegations of a conversion under the same circumstances. As the Georgia Supreme Court observed in the *Fulton Grocery* case,

> The foreclosure of a chattel mortgage obtained under such circumstances is nothing more nor less than a civil suit, and the consequences which result ... from bringing such a suit will be the same as would have flowed from the bringing of any other civil action. Before the plaintiff would be liable to the defendant for any damages growing out of the institution of such foreclosure proceeding, it must appear that it was instituted maliciously and without probable cause.

*Fulton Grocery Company*, 111 Ga. at 262, 36 S.E. 647. For these reasons, the court concludes that the overriding question in this action must be whether ITT fairly acquired the ASI inventory under legal process. The simple allegations of conversion do not address this question, and the court is of the opinion that conversion will consequently not lie. Therefore, ASI's motion for partial summary judgment with respect to conversion is DENIED. ITT's cross motion for summary judgment with respect to conversion is GRANTED.

### 3. Wrongful Levy.

■ ASI has also alleged that the procurement of its inventory by ITT amounted to a wrongful levy. Contending that the elements of recovery for wrongful levy are really identical to those for recovery for trespass, ASI has moved for summary

---

**3.** Of course, these misrepresentations might also indicate that the writ was procured by fraud. Nevertheless, fraudulent conduct has been held

to render judgments voidable rather than void. *Alabama Great Southern R.R. v. Hill*, 139 Ga. 224, 76 S.E. 1001 (1913).

judgment on its claim for wrongful levy as well. After examining the cases cited by both parties and undertaking an independent examination of liability for wrongful levy under Georgia law, the court concludes that wrongful levy is not a separate cause of action. Georgia case law indicates that the remedy for a wrongful levy as such is either trespass or malicious use of process, depending upon the circumstances. Where one levies upon the property of plaintiff under process issued against another person, trespass is said to have been committed by means of wrongful levy. *Atlantic Company v. Farris*, 62 Ga.App. 212, 220, 8 S.E.2d 665 (1940) ("a trespass to personalty may be continuous, and it consists of any unlawful deprivation of its possession. This can be done by wrongful levy as well as by wrongful sale."). However, if the plaintiff is deprived of property under process issued against him, then he may have a claim for malicious use of process arising out of such wrongful levy. *Rice v. Lewis*, 217 Ga. 7, 8, 120 S.E.2d 615 (1961).[4]

For the foregoing reasons, the court concludes that Georgia law does not recognize a separate cause of action for wrongful levy apart from the traditional causes of action designed to address the wrongful nature of a particular levy. ASI's motion for partial summary judgment as to wrongful levy is accordingly DENIED. ITT's cross motion for summary judgment as to wrongful levy is GRANTED.

### 4. Malicious Use of Process/Malicious Abuse of Process.

None of the foregoing conclusions or rulings should be construed as indicating that ASI has no remedy for the alleged tortious conduct of ITT. As the foregoing analysis makes clear, ASI states a claim for the common law tort of malicious use of process. ITT argues that ASI may not assert such a claim because of the traditional rule that the previous action must have been terminated favorably to the plaintiff. *See Georgia Veneer and Pack-*

*age Company v. Florida National Bank,* 198 Ga. 591, 32 S.E.2d 465 (1944). With respect to ASI's claim for malicious abuse of process, ITT argues that ASI has failed to allege or prove any improper use of the writ of immediate possession after it was issued. *Ellis v. Millen Hotel Company,* 192 Ga. 66, 14 S.E.2d 565 (1941).

If these torts were to be judged by their traditional standards, then these arguments might have some merit. However, as already mentioned, the Georgia Supreme Court recently redefined these torts in the case of *Yost v. Torok,* 256 Ga. 92, 344 S.E.2d 414 (1986). The court in that case recognized the impediments which many of the elements of malicious use of process and malicious abuse of process have presented to litigants. In view of the rule that malicious use of process cannot proceed as a counter-claim because the underlying action has not been determined favorably, litigants are often forced to call their complaint malicious abuse. *Id.* at 93–94, 344 S.E.2d 414. Yet, as is seen by this action, such a denomination may well fail to state a claim unless some improper use of the process is proved. Recognizing the confusing and imprecise nature of these two traditional torts, the Georgia Supreme Court merged these torts by redefinition into one tort which must be pled as a compulsory counterclaim and denominated as abusive litigation. *Id.* at 95–96, 344 S.E.2d 414.

Unless the *Yost* decision is to be applied only retrospectively, the foregoing arguments of ITT are clearly unavailing. ITT argues that the case is to be applied prospectively because the statute giving rise to an award of attorney's fees for abusive litigation after which the tort itself was patterned specifies application only to claims asserted on or after July 1, 1986. *See* O.C.G.A. § 9–15–14. Yet, a close reading of *Yost* reveals that the Supreme Court took great pains to distinguish the prospective application of that statute from the

---

**4.** Of course, there is a separate cause of action for wrongful repossession occasioned when a creditor wrongfully repossesses goods through self-help repossession. *See, e.g., American*

*Game and Music Service, Inc. vs. Knighton,* 178 Ga.App. 745, 344 S.E.2d 717 (1986). The absence of any use of process distinguishes action for wrongful repossession from the case at bar.

application of the new tort. In particular, the court declined to allow for a recovery of attorney's fees pursuant to the statute because of its prospective application. *Yost*, 256 Ga. at 96, 344 S.E.2d 414. There was no need to condition application of the new tort prospectively because the new tort did not create liability where liability had not existed before. Rather, it redefined the grounds of liability for conduct already proscribed by well-recognized torts. This much is particularly clear from a reading of those cases which have arisen since *Yost* in the Georgia Court of Appeals. *See, e.g., Young v. Bank of Quitman*, 180 Ga. App. 491, 492, 349 S.E.2d 510 (1986); *Williams v. Patel*, 179 Ga.App. 570, 571, 347 S.E.2d 337 (1986). Those cases clearly involved causes of action which arose before *Yost* and which were treated at the trial level as actions for malicious use or malicious abuse of process. Nevertheless, the Georgia Court of Appeals has analyzed these claims on the basis of the redefined tort of abusive litigation outlined in *Yost.*

Recognizing that the application of *Yost* vitiates its arguments based upon the traditional torts, ITT has further argued that it is entitled to summary judgment on these counts because ASI has not alleged any of the elements for recovery for abusive litigation. Yet, a review of the definition of the tort of abusive litigation reveals the fallacy of ITT's argument.

> Any party who shall assert a claim, defense, or other position with respect to which there exists a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, or any part thereof, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceedings by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby.
>
> The term "lacks substantial justification" shall be understood to signify conduct which is substantially frivolous, substantially groundless, or substantially vexatious.

*Yost*, 256 Ga. at 96, 344 S.E.2d 414. It cannot seriously be argued that use of process without probable cause is any different from use of process which lacks substantial justification. That is, if circumstances are such as would satisfy a reasonable man that he has no ground for the claim he has asserted, *see Haverty Furniture Company v. Thompson*, 46 Ga.App. 739, 741, 169 S.E. 213 (1933), then such conduct which would be without probable cause would also be without substantial justification. For this reason, the court holds that ASI's allegations aimed at establishing the unjustifiable nature of ITT's petition and levy of the writ of immediate possession adequately alleges a cause of action for abusive litigation.

██ Finally, ITT is not entitled to summary judgment on the basis of the undisputed facts of record. As this court's recitation of these facts makes clear, ITT asserted a claim to inventory in which it had no security interest. Given the knowledge which ITT had of the ASI inventory as it stood in December of 1985 and as it stood on January 7, 1986, ITT should have known that it had no security interest in the majority of the inventory upon which it levied. This is not to suggest that there are no issues which remain to be resolved. For example, the court must yet address any justification for ITT's conduct, such as the dubious justification given by reference to the "commingling" theory which is really applicable only to goods which have lost their identity. *See* O.C.G.A. § 11–9–315. Even if this justification is unavailing, ITT will certainly have the right to argue that its understanding of its security interest justified in part the failure to identify inventory it had financed. These and other issues remain to be addressed, but it is clear at this juncture that ASI can point to evidence establishing a claim for abusive litigation. Consequently, ITT is not entitled to summary judgment on the malicious use and abuse of process counts.

■ The court has reached the foregoing conclusions despite ITT's argument of consent. "As a general rule no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind." O.C.G.A. § 51–11–2. ITT has pointed to the conduct of Mr. Dunning during the levy as evidence of consent to the various torts. Yet, the court is convinced that Mr. Dunning's conduct does not give rise even to an issue of fact regarding consent. This conclusion is bolstered by the holding of the Georgia Court of Appeals in the case of *Reese v. Bice*, 87 Ga. App. 519, 521, 74 S.E.2d 476 (1953). In that case a constable "served" a mortgage upon the plaintiff and repossessed his truck without authority. The plaintiff was quite cooperative with this repossession effort. He bought gas for the truck and helped get the truck running. Nevertheless, the court held that such conduct did not bar a trespass suit. *Id.* at 520, 74 S.E.2d 476. Because the officer had represented himself as an authority of the law, the court held that he could not "defend on the ground that the opposite party peaceably surrendered the object to him...." *Id.* at 521, 74 S.E.2d 476. Likewise, because ITT repossessed ASI's inventory under the authority of legal process, any cooperative acts by ASI officers cannot give rise to the defense of consent. In the words of the statute, consent is not "free" if it is given in the face of an assertion of judicial authority. O.C.G.A. § 51–11–2.

For the foregoing reasons, ITT's motion for summary judgment as to malicious use and abuse of process is DENIED.

### 5. Intentional Interference with Contractual Relations.

■ ASI has alleged that the wrongful levy upon its inventory resulted in tortious interference with the relations between ASI and its other secured creditors. ITT has moved for summary judgment on this count based upon what ITT claims is the absence of "an independent wrongful act" as required by Georgia law. *See Hayes v. Irwin*, 541 F.Supp. 397, 430 (N.D.Ga.1982), *aff'd*, 729 F.2d 1466 (11th Cir.), *cert. de-*

*nied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed. 2d 119 (1984). As a preliminary matter, this requirement by its terms only applies to claims for interference with business relations. Even if ASI intended to plead this distinctive cause of action, the requirement of an independent wrongful act is met. A review of the meaning of this requirement reveals that an independent wrongful act is to be identified by reference to the substantive law of Georgia. *Keystone Metal Molding, Inc. v. R & W Metals*, 486 F.Supp. 813, 815 (N.D.Ga.1980). In looking to the substantive law of Georgia, the traditional torts of malicious use and abuse of process have been identified as common sources of the requisite independent wrongful act. *Id.* For this reason, ITT's motion for summary judgment with respect to intentional interference with contractual relations is DENIED.

### 6. Punitive Damages.

■ Based upon the allegations that ITT acted in willful and wanton disregard of ASI's property interest when it levied upon property in which it had no security interest, ASI has sought punitive damages in this case. ITT has moved for summary judgment as to the punitive damages count on the assumption that it would be successful on summary judgment with respect to all other counts of ASI's complaint. Of course, if ASI is not successful in recovering on any underlying tort, punitive damages will not lie. *Henson v. American Family Corp.*, 171 Ga.App. 724, 321 S.E.2d 205 (1984). In view of the disposition of the foregoing counts, ITT's motion for summary judgment with respect to this count must fail. At the very least, ASI would have a right to claim punitive damages if it succeeds upon its claim for intentional interference with contractual relations. In any event, the court is of the opinion that ASI may recover punitive damages if appropriate under the tort of abusive litigation. The court recognizes an inherent conflict between footnotes three and four of the *Yost* opinion. 256 Ga. at 95, 344 S.E.2d 414. It would appear from footnote four that the court approves the concept of recovering punitive damages

upon proof of malice or other aggravating circumstances. *Id.* Yet, footnote three, if it is read as referring to the redefined tort of abusive litigation, would seem to indicate that punitive damages are not allowed. Because of such confusion, this court looks for guidance to the well-settled Georgia precedent allowing for recovery of punitive damages upon proof of aggravating circumstances in a malicious use of process case. *See Melton v. LaCalamito,* 158 Ga. App. 820, 282 S.E.2d 393 (1981). For the foregoing reasons, ITT's motion for summary judgment with respect to punitive damages is DENIED.

## II. ASI'S MOTION FOR RECONSIDERATION.

■ ASI has moved the court to reconsider its order of September 25, 1986, striking ASI's jury demand on the basis of an express contractual waiver of the right to a jury trial contained in the Financing Agreement executed by the parties. ASI's motion may be simply stated as urging the court to reconsider its judgment of the scope of the jury waiver clause on the basis of the undisputed fact that the subject of this action is property which was not covered by any security agreement between the parties. ASI asks this court to reconsider its ruling in light of the fact that ITT's allegedly tortious conduct falls outside the relationship of the secured parties and thus could not have been contemplated by the jury waiver clause. The most persuasive case cited to the court in favor of reconsideration is *Rodenbur v. Kaufmann,* 320 F.2d 679 (D.C.Cir.1963). The court in that case held that a slip and fall injury suffered by a tenant did not fall within the parameters of a very broad lease agreement covering "any claim of injury or damage" arising out of matters connected with the lease and the premises actually demised. *Id.* at 684. ASI urges this court to rule that the allegedly tortious conduct of ITT likewise fell outside of a security agreement and relationship between the secured parties.

The court declines to reconsider its earlier ruling for two reasons. First, while ASI's claims do not relate to property which was the subject of a security agreement, it is difficult to understand how these claims cannot be said to have arisen either directly or indirectly out of the relationship between the parties as secured creditor and debtor. The only basis which ITT had even for petitioning for a writ of immediate possession was its status as a secured creditor. It may well be that ITT misunderstood that status. It is certainly true that ITT's state court petition and complaint misrepresented that status. Moreover, because of misunderstandings or misrepresentations, ASI was deprived of property in which ITT had no security interest. Nevertheless, these misunderstandings and misrepresentations occurred in the context of a creditor's efforts to protect its collateral. ITT's actions may have been tortious, but they were taken in accordance with ITT's understanding of its status as a secured creditor.

The case of *Rodenbur v. Kaufmann,* 320 F.2d 679 (D.C.Cir.1963), does admittedly provide persuasive authority to the contrary. Yet, this court is not convinced by the obvious analogies which may be drawn from the *Rodenbur* case that corporations which have negotiated at arm's length through experienced counsel should be relieved of the obligations of their contracts. For this reason, the court will rest its decision upon the aforementioned rationale despite the arguably contrary precedent or *Rodenbur.*

For the foregoing reasons, ASI's motion for reconsideration is DENIED.

## III. CONCLUSION.

In sum, ITT's motions for leave to submit supplemental briefs are GRANTED. ASI's motion for partial summary judgment is DENIED. ITT's motion for summary judgment is GRANTED IN PART and DENIED IN PART. ASI's motion for reconsideration is DENIED. Counsel for plaintiff is DIRECTED to inform the court's deputy courtroom clerk upon the filing of a consolidated pretrial order so that a trial date may be specially set.