CARL R. AJELLO, ATTORNEY GENERAL *v.* HARTFORD FEDERAL SAVINGS AND LOAN ASSOCIATION

SUPERIOR COURT　　HARTFORD COUNTY　　FILE NO. 197110

Memorandum filed September 15, 1975

*Carl R. Ajello,* attorney general, *Peter W. Gillies,* deputy attorney general, and *Gerard J. Dowling, John F. McKenna,* and *Robert M. Langer,* assistant attorneys general, for the plaintiff.

*Joseloff, August & Sudarsky,* for the defendant.

### MEMORANDUM ON MOTION TO STAY

PARSKEY, J. The instant motion asserts that the matter being investigated by the plaintiff is now being considered by the federal home loan bank board for the purpose of regulation under federal law, that, in so regulating the activity in question, the federal agency has primary jurisdiction over the subject matter, and that therefore this court should defer to such jurisdiction by staying any further action in the premises.

The doctrine of primary jurisdiction was developed to guide a court in determining whether it should postpone the exercise of its own jurisdiction

until after an administrative agency has ruled on some issue arising in the litigation before the court. " 'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States* v. *Western Pac. Ry. Co.*, 352 U.S. 59, 63–64.

The traditional justification for the invocation of the doctrine has been the recognized need for harmonizing the functions of administrative agencies and the courts. See *Pan American World Airways, Inc.* v. *United States*, 371 U.S. 296; *Far East Conference* v. *United States*, 342 U.S. 570, 574. The doctrine was acknowledged as being essential to effective economic regulation when challenges were launched against the interstate commerce commission's rate-setting powers. The Supreme Court realized that "without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate . . . [and] it would follow that unless all courts reached an identical conclusion a uniform standard of rates in the future would be impossible." *Texas & P. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U.S. 426, 440. Without application of the doctrine, members of regulated industries would find themselves subject to two masters, one commanding conformity to the regulatory statutes and regulations and the other enforcing the antitrust laws. The doctrine of primary jurisdiction was accordingly developed to secure preliminary rulings by administrative agencies on matters involving regulated trade.

As our state Supreme Court recently enunciated, however, the mere existence of a "special regulatory scheme for particular aspects of an industry does not, without more, render the more general provisions of the antitrust laws wholly inapplicable to that industry." *Mazzola* v. *Southern New England Telephone Co.*, 169 Conn. 344, 350. Consequently, a court in such circumstances "need not stay its hand on an antitrust controversy and await action by the agency involved simply because the defendant in an antitrust suit is subject to regulation by a public administrative body." Ibid.

The court in *Mazzola* pointed to two criteria to be utilized in determining whether the doctrine of primary jurisdiction should be recognized in an antitrust action: (1) Does the administrative agency to which the defendant would refer the matter have the power to exempt certain regulated activities from the applicable antitrust laws? (2) Do specific administrative procedures exist empowering the plaintiff to raise before the agency factual issues of decisive importance to the resolution of the antitrust issues in question?

An examination of the federal Home Owners' Loan Act of 1933; 48 Stat. 128; 12 U.S.C. §§ 1461–1468 (1970); reveals no express or implied power delegated to the home loan bank board to exempt federal savings and loan associations from the more general provisions of the federal antitrust laws. More importantly, the act is devoid of any reference, or hint thereof, to state antitrust laws. It is plain that the home loan bank board, although it supervises the activities of all chartered federal savings and loan associations, is not empowered to determine questions involving alleged violations of state antitrust laws.

That the home loan bank board does not function as the exclusive master of all the business of federal savings and loan associations is reflected in the case law. In *Beverly Hills Federal Savings & Loan Assn. v. Federal Home Loan Bank Board,* 371 F. Sup. 306, the court ruled that Congress has not preempted the field of regulating federal savings and loan associations so that the absence of specific regulations does not mean that such conduct is lawful. The court in *Larwood Co. v. San Diego Federal Savings & Loan Assn.,* 185 Cal. App. 2d 450, held that it was not necessary that a borrower from a federally chartered savings and loan association seek redress through the administrative processes of the federal home loan bank board to determine if a controversy lay within its jurisdiction in order to maintain an action in state court against the association for recovery of alleged usurious interest claimed to have been paid. In *Daurelle v. Traders Federal Savings & Loan Assn. of Parkersburg,* 143 W. Va. 674, it was ruled that the doctrine which requires exhaustion of administrative remedies is inapplicable where no administrative remedy is provided by law. It is that consideration which raises the second major criterion by which to judge the applicability of the doctrine of primary jurisdiction.

The Connecticut Supreme Court in *Mazzola,* supra, 351, concluded that the "rule is that a court should generally refer an antitrust controversy to an appropriate agency in cases where action thereon by that agency *will result* in a determination of the defendant's liability under the antitrust laws." (Italics supplied.) In that case the public utilities commission had no procedure available to the plaintiff entitling him to have the antitrust issue adjudicated by the agency. Accordingly, the doctrine of primary jurisdiction was held to be inapposite. The court noted that, in the federal cases wherein

the doctrine was successfully invoked, the referring courts "attached great significance to the fact that specific procedures existed empowering the plaintiffs to raise before the commission factual issues of decisive importance to the resolution of the antitrust suits in question." Id., 371. For example, the Federal Shipping Act, Interstate Commerce Act, and Civil Aeronautics Act all provide for the filing of complaints against members of the regulated industry.

The Home Owners' Loan Act does not so provide. Consequently, as in the *Mazzola* case, even if the administrative agency were in an advantageous position to determine a decisive factual issue concerning the defendant's antitrust liability, there exists no procedure entitling the plaintiff to have that issue adjudicated. The statute merely provides the board with the discretionary power to investigate alleged violations of pertinent federal regulations governing savings and loan associations. 12 U.S.C. § 1464 (d) (2) (A) (1970).

The defendant contends that it finds itself "in the anomalous position of being investigated by the Connecticut Attorney General about matters currently being considered by the Federal Home Loan Bank Board." While it is true that the board has proposed certain amendments to already existing regulations governing the retention of attorneys by loan or mortgage applicants, there is absolutely no evidence that the board is considering antitrust violations. In fact, the existing insurance regulation, 12 C.F.R. § 563.35 (1975), prohibits federal savings and loan associations from granting a loan on condition that the borrower contract with a particular attorney for legal services, including title examination, escrow, and abstract services. The proposed amendments would require a home borrower to be advised in writing of his right to select

his own legal counsel and would prohibit the lender from charging the borrower with its own legal costs. This court fails to comprehend how those proposals place the defendant in an "anomalous position" for they have no direct relationship to the inquiry being conducted by Connecticut's attorney general into possible violations, past or present, of Connecticut antitrust laws. That the defendant may have violated federal regulations or will be regulated more intensively is irrelevant to the instant investigation.

It should be observed that, not only substantively but also procedurally, invocation of the doctrine of primary jurisdiction is inappropriate. No antitrust action has been instituted by the attorney general against any defendant insofar as the instant case is concerned. There are no decisive factual issues to be determined by either the court or an administrative agency; the present litigation involves only the investigatory powers of the state attorney general. If this court were to defer to the federal home loan bank board's primary jurisdiction at this point, it would be in essence asserting that one of the bank board's functions is to perform the investigatory work of state antitrust enforcement officials. The proposition is without support or merit.

Accordingly, this court will not postpone the exercise of its own jurisdiction pursuant to the invitation by the defendant that the doctrine of primary jurisdiction be invoked.

The motion to stay petition is denied.

### MEMORANDUM OF DECISION ON PETITION FOR AN ORDER OF COMPLIANCE

PARSKEY, J. Pursuant to § 35-42 (f) of the General Statutes, the attorney general of the state of Connecticut has petitioned this court for an order

of compliance directing the defendant to obey a subpoena duces tecum. Connecticut's updated Anti-Trust Act (General Statutes §§ 35-24 to 35-44) empowers the attorney general, or his deputy, to issue, by subpoena duces tecum, demands requiring persons to submit documentary material to him relevant to the scope of any alleged violation of the antitrust laws which he believes has taken place.

The defendant, who has failed to furnish the requested documents, contends that (1) General Statutes § 35-42 violates the fourth, fifth, and fourteenth amendments of the constitution of the United States and article first, § 7, of the constitution of Connecticut and (2) the attorney general has not complied with the statutory conditions governing the issuance of subpoenas duces tecum.

The purpose of the state Anti-Trust Act is to enable the attorney general, who is charged with the enforcement of the state's antitrust laws, to obtain documentary information to determine if there has been a violation of the antitrust laws and, if there has, to issue a civil complaint based thereon. *Mobil Oil Corporation* v. *Killian,* 30 Conn. Sup. 87. The function is to afford the attorney general a form of pretrial discovery similar to that made available to the antitrust division of the United States justice department by the Antitrust Civil Process Act of 1962, contained in 76 Stat. 548–552; 15 U.S.C. §§ 1311–1314 (1970). As it envisions a precomplaint procedure, the attorney general is not required to allege with precision such facts in his demand as would be necessary to set forth a cause of action in a formal complaint. By utilizing the statute, the attorney general is acting in an investigative role rather than as an enforcement officer. Accordingly, it cannot be required of him that he specify in advance the exact nature of the conduct under investigation for that would defeat the purpose of

the statute. As the court concluded in *Mobil*, supra, 91, he cannot be charged with a duty to "know in advance what he cannot know until the investigation is completed."

Although constitutional objections have frequently been made to statutes authorizing administrative investigations and inspections, orderly investigations by such agencies have been authoritatively upheld. In the leading case, *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186, a federal administrator's right to judicial enforcement of subpoenas duces tecum issued by him in the course of investigations conducted pursuant to § 11 (a) of the Fair Labor Standards Act was upheld. The Supreme Court noted (p. 196): "Petitioners' plea that the Fourth Amendment places them so far above the law that they are beyond the reach of congressional and judicial power as those powers have been exerted here only raises the ghost of controversy long since settled adversely to their claim." The court recognized that to deny the validity of the enforcement orders would in effect deny not only Congress' power to enact the provisions sustaining them but also its authority to delegate effective investigatory powers, if not perhaps Congress' own power to institute such inquiries. The court summarized (p. 208) the law insofar as it applies to the production of corporate records and papers in response to a subpoena or order authorized by law: "[T]he Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are rele-

vant." Since article first, § 7, of the state constitution is couched in the same language as the fourth amendment, it should be accorded the same interpretation. *Hing Wan Wong* v. *Liquor Control Commission*, 160 Conn. 1, 6; *State* v. *Mariano*, 152 Conn. 85.

Accordingly, as the Connecticut legislature may lawfully authorize investigations by the state's attorney general into alleged violations of the antitrust laws, the only substantial question remaining is whether the attorney general's investigation in the instant case is in conformity with the statutory authorization. As the attorney general's investigatory powers are derived from General Statutes § 35-42, he is consequently limited by the procedures set forth therein, although such limitations as may exist are not necessarily mandated by any principle of constitutional law.

The defendant asserts that the subpoena in question fails to "state the nature of the alleged violation" which the attorney general believes has transpired, such statement being required by § 35-42 (b) (1) of the General Statutes. The statute (§ 35-42) reads, in part: "(a) Whenever the attorney general, or his deputy, has reason to believe that any person has violated any of the provisions of this chapter, he may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him documentary material *relevant to the scope of the alleged violation*; (b) *such demand shall (1) state the nature of the alleged violation,* and (2) describe the class or classes of documentary material to be reproduced thereunder with such definiteness and certainty as to be accurately identified . . . ." (Italics supplied.) The demand made in this case by the attorney general

stated that the defendant was required to submit certain data "because of alleged violation of the Connecticut Anti-Trust Act, §§ 35-26, 35-27 and 35-28 (d)." The issue, narrowly posed, is whether that statement in the subpoena is sufficient to meet the statutory requirement that the demand state "the nature of the alleged violation."

Unlike the analogous federal Antitrust Civil Process Act, 15 U.S.C. §§ 1311–1314 (1970), General Statutes § 35-42 does not require that the attorney general state the nature of the *conduct* constituting the alleged antitrust violation which is under investigation. Therefore, the absence of such a statement as to conduct in the subpoena duces tecum under consideration is not a fatal defect.

According to the subpoena, the investigation concerns activity prohibited by General Statutes §§ 35-26, 35-27, and 35-28 (d). Section 35-26 is patterned after § 1 of the federal Sherman Anti-Trust Act, while § 35-27 is the state analogue of § 2 of the Sherman Act. 26 Stat. 209, as amended, 15 U.S.C. §§ 1–7 (1970). Section 35-28 (d) is essentially a codification of what has been labeled a per se violation of § 1 of the Sherman Act. See *Klor's, Inc.* v. *Broadway-Hale Stores, Inc.,* 359 U.S. 207. Therefore, any violation of § 35-28 (d) would simultaneously be a violation of § 35-26. Any violation of § 35-28 would necessarily be subsumed under § 35-26 or § 35-27 in any event.

It should be observed here that federal courts have been wary of attempts to frustrate the investigative purposes of the more stringent federal act by attacks on the sufficiency of the statement of conduct alleged to be an antitrust violation. Although the demand in question stated only that it was investigating a possible violation of § 1 of the Sherman Act by a "contract or combination in unreasonable restraint of trade," the court in *Material*

*Handling Institute, Inc.* v. *McLaren,* 426 F.2d 90, cert. denied, 400 U.S. 826, held it to be sufficient. The court acknowledged the terseness of the statement but determined that the record established that the recipient understood what conduct was under investigation. In a leading case, *Petition of Gold Bond Stamp Co.,* 221 F. Sup. 391, aff'd, 325 F.2d 1018, the court was mindful of the purpose of the Antitrust Civil Process Act, that being to permit the justice department to determine whether there had been a violation of the antitrust laws, and, if so, to enable the government to allege properly any violation in a civil complaint. The statute authorizing the issuance of civil investigative demands was not interpreted to require specification of the particular offense under investigation. As in the *Material Handling Institute, Inc.,* case, supra, the court concluded that it was apparent from the record that the recipient understood the intent and scope of the demand served upon it. That conclusion was reached by the observation that the recipient had asserted before the court that the investigation was comparable to that which was being conducted by the federal trade commission into the trading stamp industry, particularly concerning two of the principal trading stamp companies.

The record in the instant case likewise indicates that the defendant is quite cognizant of the scope of the attorney general's investigation. The statement of the nature of the alleged violation, while not particularly narrow, is no broader in scope than that in question in the *Material Handling Institute, Inc.,* case. In that case the more rigorous standards of the federal antitrust civil process statute were being applied.

The fact that a violation of General Statutes § 35-28 (d) may simultaneously be a violation of

either of the more general antitrust provisions, § 35-26 or § 35-27, does not render the statement of the nature of the alleged violation insufficient; for that is but a consequence of the overlapping nature of Connecticut's antitrust laws. As in the *Petition of Gold Bond Stamp Co.,* supra, the defendant here is asserting that the subject matter under investigation is currently being considered by another supervisory governmental agency. It is thus apparent that the defendant is, in point of fact, very well informed of the nature of the alleged violation under investigation. To read the requirements of General Statutes § 35-42 in an overly strict manner would only spawn unnecessary litigation and encourage recipients of lawfully issued subpoenas duces tecum to challenge the sufficiency of notice on very technical grounds.

Accordingly, the petition is granted, and an order may enter requiring the defendant to comply immediately with the plaintiff's subpoena duces tecum and written interrogatories.