[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS MOTION TO STRIKE CASE FROM JURY LIST
This action is a suit on two promissory notes and certain guarantees for the payment of the notes. All the plaintiff's allegations arise out of the obligations and/or the indebtedness of the defendants who executed the promissory notes and guarantees that are the subject of this litigation.
The first promissory note is dated March 20, 1989. The maker of the note is the defendant, 19 Meadow Street Associates. The second promissory note is dated March 31, 1993 and the maker is also 19 Meadow Street Associates. Payment of the First note is guaranteed by the defendants Steven Sirois and Ronald Sirois. Payment of the second note is guaranteed by the defendants Steven Sirois, Ronald Sirois, Susan Sirois, James Sirois, Elaine Sirois, Clarence Ouellette, and Rolande Ouellette and I-Con Systems.
The second note is entitled a "Replacement Term Promissory Note and was executed as a replacement of an earlier promissory note executed on July 7, 1992. The maker of the earlier note was the defendant I-Con and the second note substitutes the defendant 19 Meadow Street Associates. At the time the second note was executed I-Con executed a guarantee dated March 31, 1992 in which it guaranteed payment of this note. The guarantees of the second note were executed by the individual guarantors on July 7, 1992. On or about the same date the individual guarantors also executed a letter agreement in which they acknowledged they had an opportunity to consult with counsel but had decided not to retain counsel. On or about March 31, 1993 the defendant guarantors executed a letter agreement in which the individual guarantors reaffirmed their July 7, 1992 guarantees. CT Page 5949
In July 1995 the defendants filed an answer to the plaintiff's revised complaint, several special defenses and counterclaims. On July 26, 1995, the defendants filed a claim slip claiming this matter to the jury trial list.
The plaintiff then moved to strike this case from the jury trial list on the grounds that the defendant guarantors and the defendant 19 Meadow Street Associates, knowingly, intentionally and voluntarily waived their rights to a jury trial. An evidentiary hearing was held to resolve the claim made by this motion. Several witnesses testified for each side and briefs have been submitted.
 A.
Certain general observation should be made concerning what the court perceives as the applicable law on the question raised by the motion.
It has been said and it is of course true that the right to a jury trial remains inviolate, Skinner v. Angliker, 211 Conn. 370,373 (1989), but this right like other rights may be waived,Leahey v. Heasley, 127 Conn. 332, 336 (1940). However, our court has said the right to a jury trial "is a right the waiver of which is not to be inferred without reasonably clear evidence of the intent to waive", Noren, et ux v. Wood, 72 Conn. 96, 98
(1899). But this is not to say of course that such an agreement to waive the right made in advance of litigation violates public policy — it does not, Nowey v. Kravitz, 133 Conn. 394, 396
(1947).
Since resolution of the waiver issue turns on intent, "whether a party has waived his (sic) right to a jury trial presents a question of fact for the trial court", Krupa v.Farmington River Power Co., 147 Conn. 153, 156 (1959).
The language in the Federal constitution guaranteeing the right to a jury trial is very similar to the language in our state constitution. Federal case law can be turned to for guidance in interpreting the ambit of fundamental rights, HingWan Wong v. Liquor Control Commission, 160 Conn. 85, 94 (1970),State v. Mariano, 152 Conn. 85, 94 (1964), Ajello v. HartfordFederal Savings Loan Assn., 32 Conn. Sup. 198, 207 (1965). CT Page 5950
Cases in the Second Circuit, N. Feldman Son Ltd. v. CheckerMotors Corp., 572 F. Sup. 310, 313 (S.D.N.Y., 1983). Fourth Circuit Leasing Service Corp. v. Crane, 804 F.2d 828, 833
(CA 4, 1980) and Tenth Circuit Dreiling v. Peugeot Motors ofAmerican Inc., 539 F. Sup. 402, 403 (1982) hold that in the context of an express contractural waiver of the right to a jury trial, the party seeking to enforce the waiver has the burden of showing that the consent of the party objecting to waiver was knowing and voluntary.
In Dreiling, the court acknowledges that the right to a jury trial may be waived but cites Aetna Insurance Co. v. Kennedy,301 U.S. 389, 393 (1936) and Rodenbir v. Kaufman, 320 F.2d 679, 683
(D.C. Cir, 1963) for the proposition that courts will indulge every reasonable presumption against waiver and then goes on to say: "In view of this strong presumption the defendants have a very heavy burden of proving" a knowing, voluntary, and intentional agreement to waive their right to a jury trial. 539 F. Supp. at page 403.
This court is aware of only one federal circuit that has a different position on the burden of proof. In K.M.C. Co., Inc. v.Irving Trust Co., 752, 759 (CA 6, 1985) the Sixth Circuit held that in the context of an express contractural waiver the party objecting to the waiver should have the burden of demonstrating that its consent to waiver of a jury trial was not knowing and voluntary. The court relies on the position stated in 5 Moore's Federal Practice § 38.46 at 38-400 (2d ed 1984) to the effect that as regards such an objection to waiver a court should start with a presumption in favor of the validity of contract provisions providing for waiver in the interest of liberty of contract, id page 758. This court disagrees with this position because like the Magistrate below in KMC Co. the court believes the constitutional right to a jury trial may only be waived if done knowingly voluntarily, and intelligently and the question as to whether this standard has been met is a constitutional question separate and distinct from the rules of substantative contract law, 757 F.2d at pp. 755 — 756, see also discussion inOvermeyer Co v. Frick Co., 405 U.S. 183, 184-186 (1972). The reasoning of the court in Dreiling on this question is persuasive and in any event the fact that the Second Circuit shares this view has an added attraction business people in a common geographical area can assume substantive contract provisions will be interpreted and enforced similarly no matter what court, state or federal, they find the misfortune to be in. In any event this CT Page 5951 court will place the burden on the plaintiff bank to enforce the express contractural waiver by showing the consent of the parties objecting was knowing, voluntary, and intentional.
 B.
In order to provide a framework within which to weigh the arguments advanced by counsel and the facts presented at the hearing in this matter, the court will review several federal cases that discuss some of the issues that arise in this case and thus the bearing of these cases on the question of whether there has been a waiver of the right to jury trial. The court will discuss only federal cases partly because of the article in 92 ALR F. ed 688 which conveniently provides them; the article is entitled Contractural Jury Trial Waivers in federal Civil Cases.
Also a decision in this matter depends on a weighing of various factual matters and since there are numerous federal cases that do so there is no reason to wander through the National Reporter system to determine what a variety of state decisions have held that merely engage in the same weighing process.
(1.)
The location, type size, and length of the contract or note in which a jury waiver provision appears is of course important to the courts but not necessarily controlling. In Leasing ServiceCorp. v. Crane, 804 F.2d 828, 833 (CA 4, 1986) the court noted that the clause was on the reverse side of a two page fine print contract. It was not set off in a paragraph of its own and was in fact in the middle of a thirty-eight line paragraph. However, the Court of Appeals did not find the district court's finding of waiver clearly erroneous because the parties were not manifestly unequal in bargaining position. The parties objecting to waiver were sophisticated businessmen who had many years of business experience. The parties engaged in protracted negotiations and even had provisions they objected to in the contract lined out. They insisted on and procured the execution of an handwritten agreement ancillary to the written contract which limited the lessor's remedies in the event of default. In Re Reggie PackingCo. Inc., 671 F. Sup. 571 (ND, Ill., 1987) held the waiver clause was not "buried" in the contract language. There are no special requirements for setting off or highlighting a jury waiver clause according to the court. The contract was only three pages long and the waiver clause was located at the end of a paragraph only two inches above the parties signatures. The court noted also CT Page 5952 that the parties resisting waiver had a lawyer and the fact that they had a chance to negotiate the agreement is evidenced to the court by the fact that at their request two provisions in the contract were altered — hardly an indication that the parties objecting to waiver were "at the mercy of the financier, and had no choice but to accept" the terms of the contract, Id, page 573.Phoenix Leasing Inc. v. Sure Broadcasting, Inc, 843 F. Sup. 1379
(D. New 1994) is an interesting case. The court found that waiver should be enforced. It noted that the waiver clause was printed in capital letters whereas most of the other contract provisions were in lower case. The clause was the only material contractural clause appearing on the signature page and appeared right above the signature line. What is interesting is that the court inPhoenix Leasing and the other cases now being discussed that found waiver, did not stop their discussion after finding the waiver clause was not "buried" in contract language. The court inPhoenix Leasing thus went on to note that all parties were represented by counsel and the defendant was a sophisticated businessman. There was some inequality of bargaining position but the court noted the loan here was merely to secure start up money for a profit making cable company. Furthermore the court noted there was an opportunity to negotiate. In fact contract provisions were changed as the result of negotiation and no objection was ever raised to the jury waiver clause. A similar case is N. Feldman Son L D v. Checker Motors Corp,572 F. Sup. 310, 313 (SDNY, 1983) where the court noted the waiver clause was clearly visible and directly above the signatures of the contracting parties. The court found waiver by going on to note that although the defendant was unrepresented by counsel, the agreement was the result of years of negotiation and the defendant had been party to a similar agreement with the plaintiff where there was a jury waiver provision. For another case upholding waiver under circumstances similar to N. Feldman Son and Phoenix Leasing see also Cooperative Finance Assoc. Inc.v. Garst, 871 F. Sup. 1168, 1172-1173 (N.D., Iowa, 1995).
Thus waiver will not be automatically found even though the waiver clause is not hidden in the small print of a lengthy contract. In Whirlpool Financial Corp. v. Sevaux, 866 F. Sup. 1102
(N.D., Ill. 1994) the court found there was no waiver despite the fact that the waiver was printed in capital letters. The court noted the waiver provision was only three lines in a six page loan agreement. Sevaux was not familiar with our civil jury system. He was a sophisticated businessman but he alleged, and the defendant did not dispute, that he desperately needed CT Page 5953 cash. Also Sevaux had no lawyer and had no opportunity to have a lawyer review the note. Also there was no negotiation over the jury waiver clause.
Of course where the waiver clause is concealed in a morass of fine print courts have not found waiver. Thus an older case finding there should be no waiver despite an express waiver clause is National Equipment Rental Ltd v. Hendrix, et al.565 F.2d 255 (CA 2, 1977). The court found the waiver clause was set deeply and inconspicuously in the contract. Also the court found Mr. Hendrix had no other choice but to accept the contract as written if he was to get badly needed funds — this suggested to the court there could not have been a knowing and intelligent waiver, Id. p. 258.
(2.)
As some of the just cited cases indicate whether the parties had the opportunity to and did in fact negotiate over the terms of the contract or note actually signed is a factor considered by the courts. This has some bearing on whether the party who objects to the waiver was fully aware of the provisions of the agreement and/or was of such unequal bargaining power that he or she had to accept not only the jury waiver provision but any other contact provision. Thus in Sevaux in concluding there was no waiver despite the jury waiver clause the court noted, in addition to other factors, that the clause was never discussed. The waiver clause appeared in an unnegotiated form contract and was never brought to the attention of the defendant. All of this militated against a funding of waiver, 866 F. Supp. at pp. 1105-1106. Similar to this case is the case of Dreiling v. PeugotMotors of America, Inc., 539 F. Sup. 402, 403 (D. Colo, 1982). Also see Banfield v. AAMCO Transmissions Inc., 717 F. Sup. 589,595 (N.D. Ill, 1989) were one of the factors leading the court to uphold the waiver was the fact that the waiver clause was "expressly discussed."
(3.)
Whether or not there was an inequality of bargaining power is also an important factor to the courts. Again it goes directly to the question of whether any waiver was knowing voluntary, and intelligent — a person desperate for funds is less likely to be said to have made a free decision. In finding against waiver the court in Sevaux, as noted, referred to the fact that the CT Page 5954 defendant's company "desperately needed an infusion of funds,"866 F. Supp. at 1106, also see the Hendrix case at565 F.2d p. 258: "Hendrix did not have any choice but to accept the NER contract as written if he was to get badly needed funds." The court in In Re Reggie Packing Co., Inc., supra recognized that inequality in bargaining power is evidence that a contractural waiver of jury trial was neither knowing nor voluntary. But the court noted that the fact that the defendant was able to change two provisions of the agreement during negotiations "belie the assertion that Reggie was completely at the mercy of its financier and had no choice but to accept Lazier's terms", Id. at 671 F. Sup. page 573. In the Crane case previously discussed the court at 804 F.2d page 833 noted that the factors previously alluded to — sophisticated businessmen, actual changes in contract provisions, protracted negotiations, insistence on side bar agreement — belied any claim that the parties were "manifestly unequal in bargaining position."
The Phoenix Leasing case also rejected the notion of unequal bargaining power on the facts of the case before it as a reason to find against waiver. The court noted the money sought in the initial loan was just start up money for a profit making business. There was no evidence that the defendant was in difficulty or under any form of duress, nothing compelled the defendant to accept the loan on the terms offered, the deal could have simply been rejected. In fact the defendant had "significant bargaining power" because he was able to effectuate changes in the loan papers, 843 F. Supp. at page 1379. The court also cited the case of Banfield v. AAMCO Transmissions, Inc., 717 F. Sup. 589,596 (N.D. Ill, 1989) for the proposition that unequal bargaining position by itself should not otherwise invalidate an otherwise valid contractural waiver of the right to a jury trial. This characterization of Banfield goes too far. My examination of the Banfield case does not lead to that interpretation of it — in fact such a position would be too extreme because lack of equal bargaining power goes directly to the issue of whether a waiver could be knowing and intelligent. It is better to say it is one factor to be weighed along with other factors and it is an important factor.
On the question of inequality of bargaining power the Garst
case in upholding waiver expanded on the reasoning in PhoenixLeasing when it noted that among the factors militating against such a finding was the fact that: "There is no evidence that Garst could not have sought renewal or replacement financing CT Page 5955 elsewhere if he had objected to the terms of the CFA's loan; to the contrary, CFA had demonstrated that it did not consider Garst's or Double G. Ranch's financial position to be `distressed' or that Garst had no recourse for financing but CFA", 871 F. Supp. at page 1172.
(4.)
The courts also look to whether or not the party objecting to waiver had counsel at the time he or she signed a contract or note which included a clause waiving the right of jury trial.
Whether a person had a lawyer during negotiations for a contract or loan has bearing on the issue of waiver and whether the waiver can be said to have been knowing, voluntary, and intelligent. The importance of this factor depends on a variety of factors.
In re Reggie Packing Co., 671 F. Supp. at 573, held that the fact that all sides were represented is one factor courts take into consideration in ruling on the issue of waiver, see alsoPhoenix Leasing Inc. v. Sure Broadcasting, Inc.,843 F. Supp. at p. 1385. In Whirlpool Financial Corp. v. Sevaux supra.,866 F. Sup. 1106 the court ruled against waiver. It noted, as previously discussed, that the waiver clause was not bargained over, the clause was not prominently located in the agreement, and the defendant desperately needed money. The court also noted that despite the fact that Sevaux was a successful businessman he was not represented by counsel. The court also said this was not a situation where Sevaux was represented by counsel but choose not to have him review the agreement, Banfield v. AAMCOTransmissions, Inc., 717 F. Sup. 589, 595 — 596 (ND, Ill. 1989). But absence of counsel does not dictate that a finding of waiver cannot be made. Thus in the N. Feldman Son case the court found waiver although it noted the party objecting to waiver was unrepresented. The court went on to say, however, that the agreement was the result of years of negotiation and the party objecting to waiver had previously been a party to a similar agreement providing for jury waiver 572 F. Supp. at page 313. InLeasing Service Corp. v. Grane, supra, 804 F.2d p. 833, andCooperative Finance Ass'n Inc. v. Garst, supra871 F. Supp. p. 1172
it does not appear that the parties objecting to waiver were represented by counsel but the court found waiver, noting among other factors that they were sophisticated and experienced business people. CT Page 5956
These then are the factors considered by the courts in deciding if a clause in a contract or note waiving the right to a jury trial should be enforced — (1) location of the clause in document and type size (2) whether the waiver clause was negotiated (3) the relative bargaining power of the parties (4) whether the party objecting to the waiver was represented by counsel (5) whether that party was a sophisticated business person. As a review of the cases indicates the courts differ on the ambit and protection they choose to give to the constitutional right to a jury trial when faced with a contract with a clause expressly waiving the right to a jury trial. However, none of the cases appear to treat the problem simply as one of contract interpretation. Thus the old rubric that when "a person of mature years who can read and write signs or accepts a formal written contract affecting his (sic) pecuniary interest, it is his duty to read it, and notice of its contents will be imputed to him if he negligent fails to do so", G R TireDistributors Inc. v. Allstate Ins. Co., 177 Conn. 58, 62 (1979) is inapplicable, strictly speaking, to the problem before the court. As mentioned previously the constitutional right to a jury trial may be waived only if done knowingly, voluntarily, and intentionally. That is a constitutional question separate and apart from the rules of substantive contract law and contract interpretation. How could it be otherwise after Overmeyer Co v.Frick, 405 U.S. 183, 184-186 (1972). Therefore the location of a waiver clause, its type size are of course relevant considerations but they are only one set of factors to be considered by a court and provide only a beginning of the analysis not a resolution.
 C.
Turning to the facts here the basis of the claims turns on the guarantees of the previously mentioned second note by the individual guarantors on July 7, 1992. On or about the same date these same guarantors also executed a letter agreement in which they acknowledged that they had an opportunity to consult with a lawyer and "it was their decision not to retain counsel." The individual guarantors are James Sirois, Steven Sirois, Susan Sirois, Ronald Sirois, Caryl Sirois, Elaine Sirois, Clarence Ouellette and Rolande Ouellette.
On or about March 31, 1993 the guarantors executed a letter agreement in which the individual guarantors reaffirmed their CT Page 5957 guarantees dated July 7, 1992.
Each individual guarantor signed a similarly worded guaranty on July 7, 1992. It is a ten page document entitled "GUARANTY." The jury waiver clause appears on page 7 of this document in capital letters, the rest of the document except for certain other waivers is in lower case type. The jury waiver clause is subsection D of section 2.05 which is entitled in small type "Waivers; Payment of Costs." A subsection A follows in large type in which there is a waiver of demand, presentment, protest, and notice of the guaranty. In B the guarantors agree to pay certain costs, this is in small type. Subsection C, again in large type, makes waivers regarding prejudgment remedies. Subsection D follows which is the jury waiver clause. The conclusion of subsection D is of some interest. The last sentence after the sentence waiving the right to jury trial states, in capital letters that the guarantor acknowledges that the waiver of the right to jury trial is made knowingly, voluntarily and without duress and "only after extensive consideration of the ramifications of this waiver with his (sic) attorney." The individual guarantors signed on the last page of the ten page agreement and their signature was acknowledged to be their free act and deed by the notary who took each one of their oaths.
The March 31, 1993 letter agreement is a five page document. On the fourth page in paragraph 11 there is a waiver regarding prejudgment remedies. This is in capital letters as is paragraph 12 which contains the jury waiver. The last sentence of the jury waiver clause contains the same representations regarding consultation with counsel as the July 7, 1992 guaranty. The waiver provisions are in capital letters, the rest of the document is in lower case. The signatures of Steven Sirois and James Sirois appear for 19 Meadow Street Associates and I-Con on the first page. James, Steven and Ronald Sirois have signature lines on the fourth page just below the jury waiver clause. The signature lines for the other guarantors are on the fifth page of the document.
Whether or not the jury waiver clauses should be enforced is a separate question as to each guarantor. As to each of them it must be decided if the waiver was knowingly and voluntarily made, free of duress. The need to proceed in this way only underlines the fact that the task before a court in this situation is not one of mere contract interpretation but involves the appropriate enforcement of contract provisions in light of fundamental CT Page 5958 constitutional rights which they appear to waive.
1992 Closing and Documents Associated with it.
Each of the guaranty documents signed by the individual guarantors had the same format. The waiver cannot said to be "buried" in the guaranty in the sense that it is a fine print clause buried in a sea of other fine print in the middle of a fifty page document. It is in capital letters in a document otherwise printed in small case letters. On the other hand the clause is located in the middle of a seven page document containing technical financial terms and obligations. It cannot be said, however, that the location of the waiver and its print size are so obscure and hidden that this alone would preclude a finding of a knowing and intelligent waiver.
It is also true that the plaintiff bank prior to the closing date of July 7, 1992 sent to the individual guarantors a packet of documents which included the form of the guaranty which was to be executed by each guarantor and the so-called 1992 Letter Agreement executed by each guarantor in which they acknowledged that they had an opportunity to consult with an attorney and decided not to retain counsel. Also in advance of the closing they were sent a letter by the plaintiff bank in which it was said that the bank representative understood counsel was not being retained but recommended independent counsel be retained to review the documents since they "are complicated and have important legal consequences."
The presence or absence of counsel is an important consideration when there is an attempt to enforce a contract clause expressly waiving the right to a jury trial. If the party objecting to the waiver had a lawyer at the time the contract or note was signed, it can be assumed that the lawyer examined all documents and their contents including the jury waiver clause and despite the waiver advised his or her client to sign the contract note, or guaranty. A lawyer is trained to make decisions regarding these matters and a party who retains a lawyer for the very purpose of securing advice about contract language should not be able to hide behind the attorney-client privilege so as to plead ignorance about a contract clause.[1]
On the other hand the failure to consult with a lawyer after being advised to do so by the other contracting party or the failure to do so despite having the opportunity, standing alone, CT Page 5959 do not dictate that a waiver of the constitutional right must be found. Whether a party waives the right to counsel says nothing about whether the separate right to a jury trial has been intelligently, knowingly, and voluntarily waived.
In this context the waiver of the right to counsel and its relevance to a jury trial waiver may have a negative relevance in the sense that failure to consult with counsel despite the fact that the opportunity existed and/or the other contracting party advised it to some extent at least, is evidence rebutting a claim of unequal bargaining power or an involuntary waiver of the jury right based solely on the argument that there was no practical chance to consult with a lawyer.[2]
At this point it is necessary to examine the effect of the waiver clause as to each of the defendants. The situation of the wives, Susan Sirois, Elaine Sirois, Caryl Sirois and Rolande Ouellette as well as Clarence Ouellette can be examined together and separately from James, Rolande, and Steven Sirois.
The court will first discuss the cases of Susan Sirois, Elaine Sirois, Caryl Sirois, Rolande Ouellette and Clarence Ouellette. First, it appears to be undisputed that James Sirois conducted all the negotiations with the bank that led up to operative documents signed at the 1992 and the 1993 closing. Testimony taken here establishes that this was true and that all parties knew it to be true despite the fact that before each closing the bank sent to the four previously mentioned women and Clarence Ouellette copies of documents to be signed and a letter to each regarding the advisability of retaining counsel. James Sirois ran the business or certainly this aspect of it vis a vis the bank. This lends support to a claim by these particular individuals that they not only didn't pay a great deal of attention to the documents first sent to them before each closing by the bank but also at the 1992 closing when each of the guarantors signed a guaranty. I accept Attorney Helzick — Satz's testimony which is supported by a memorandum to her file, that James Sirois said at the closing that he had consulted with "his counsel" about the documents about to be signed. This to me, however, only further underlines the fact that he was running the show. Waiver of an important constitutional right cannot be found on the basis of one party having a proxy power to waive the rights of others. No evidence was presented that James Sirois discussed any conversations he might have had with his lawyer with the four women and Clarence Ouellette. In fact the inference CT Page 5960 from the evidence is that they would not have expected him to do so.
As the discussion of the case law indicated, however, the presence or absence of counsel is not the only factor the courts consider in these waiver cases nor is it the decisive factor necessarily. Courts consider the sophistication of the parties and whether they can be said to have negotiated or participated in a process of negotiating the contract terms.
Rolande Ouellette and Clarence Ouellette were very nice, straight-forward people. But neither one had a significant business background or an educational background that might be of relevance to the concerns of this case. Clarence Ouellette is a carpenter and cannot be described as a sophisticated business person with a knowledge of the day to day financial operations of I-Con or the 19 Meadow Street Association. There was no evidence that these two people negotiated any of the terms of the guaranty or had anything that they were expected to do regarding these transactions but sign there names. Susan, Elaine, and Caryl Sirois appeared to be educated individuals who had prior business experience. Caryl Sirois worked in a bank and had some familiarity with mortgage and note paper. Elaine Sirois had worked as a legal secretary and prepared probate forms and forms involved in closings such as notes, warranty deeds, and promissory notes. Susan Sirois has business degrees, worked at an insurance company and later was the assistant manager at a book store. But none of these women were involved in this business or in the negotiations surrounding the loan transactions involved here. As Susan Sirois said it appears she and each one of them believed "the guys" were acting in their best interests. They all knew the money was needed for the business and they, relied on their husbands' judgment regarding this matter.
All of this places in context the testimony about what actually transpired at the 1992 closing. The testimony of the bank representatives is highly credible; they were honest and straight-forward witnesses. A friendly atmosphere existed and indeed the relationship between all the defendants and the bank were friendly up to the time of and including the events involved in both the closings. As to the 1992 closing the guarantors had an opportunity, if they chose to exercise it, to review the documents or ask questions. I accept Attorney Satz's testimony that the guarantors were told the documents contained important legal rights. Satz said the guarantors reviewed the documents but CT Page 5961 did not define what that meant or could mean especially with regards to the jury waiver clause. No specific questions were asked about that clause by anyone. From the perspective of the four wives and Clarence Ouellette the signing of the documents at the 1992 closing was a proforma event where the documents were signed because it was necessary for the business, everyone trusted the judgment of James Sirois and the "guys". I credit for these reasons the testimony of the four women and Clarence Ouellette that they did not examine the documents or really attend to the rights that they might be waiving.
It seems to the court at least that in these small business situations where a bank is dealing in a loan transaction with one individual or small group of individuals who actually run a business but the bank wants family members, relatives or close friends to guarantee a loan so access can be had to their assets upon default, that the bank should take more steps than those taken here if it hopes to enforce a waiver of important statutory or constitutional rights. This type of guarantor is likely to be an unsophisticated person or certainly not sophisticated in the operation of the business seeking the loan. Since this type of family or friend guarantor is signing the guaranty just to accommodate a spouse or friend, he or she is not likely to consult with an attorney. Banks, attentive as they are to the operation of the real world, I am sure realize this so letters advising this class of guarantor to consult with an attorney do not have much practical significance in the real world.
In preliminary communications with this type of guarantor it is not making too heavy a demand on banks — in addition to sending copies of all the documents that will have to be signed and advising the prospective guarantor of the actual financial risk being run and the advisability of retaining counsel — to also expect that they will advise people in brief fashion of important statutory and/or constitutional rights that would be waived upon signing of a guaranty. As an alternative at the actual closing bank representatives could explicitly refer to such rights and the fact that they are being waived. We are talking about a paragraph in a letter and five minutes of time at some closing. Perish the though that the bank and/or the people who actually run the business and want the money do not want such rights and the consequences of their waiver more explicitly because they do not want to scare off an unsophisticated guarantor. CT Page 5962
In any event apart from general policy considerations, based on the previously discussed facts I cannot find that Susan, Caryl, Elaine Sirois or Clarence and Rolande Ouellette waived their right to a jury trial in this case by signing the guaranty at the July 1992 closing.
I believe the situation of James, Ronald and Steven Sirois stand on a different footing with regard to the jury waiver question and what effect the waiver should have.
As to James Sirois, he himself, most if not all of the other defendants and the bank representatives attested to the fact that he was the person who negotiated with the bank for what was basically involved here — a loan extension. It appears that he attempted to negotiate the extension for a longer period of time and was disappointed when the bank only gave a nine month extension on the note. He realized that he would keep having to renegotiate nine months extensions. The court does find that the jury waiver clause was not specifically bargained over. But the decisions make clear that this is only one factor, albeit an important one that should be considered by the courts. The point is that he negotiated the financial terms of the extension. It won't do under these circumstances for a party to pick and choose between portions of the agreement as finally worked out and say that I did not pay any attention to "legal details." Mr. Sirois negotiated and lived with the papers he eventually ending up signing for quite a period of time. He was and is a sophisticated businessman who by his own admission had twenty years of experience in running the businesses at issue. He did not have a lawyer actually represent him in the negotiations or at the closing but he had access to an attorney and apparently discussed these matters with the lawyer on an as needed basis. The lawyer is a skilled one, well versed in these matters who had represented Mr. Sirois for years.
At points in his testimony Mr. Sirois indicated that he had to sign the documents at issue here because his twenty year business was on the line. But Mr. Sirois testified he had a friendly relationship with the bank and even somewhat of a social relationship with one of the bank representatives. His great annoyance at the time of the negotiations, negotiations which he apparently initiated, was that he could only get a nine month extension and this would mean he'd have to renegotiate every nine months for an extension. All of this does not have the flavor of that type of economic duress that can be said to have overwhelmed CT Page 5963 the will of a negotiating party so that any decision regarding the guaranty cannot be said to have been free and voluntary. Besides there was no hard evidence in the form of balance sheets and presentation of the business status and operations of these concerns to either support a claim of dire circumstances or exclude the possibility of access to sources of credit other than the plaintiff bank. Neither is it appropriate to use the hindsight of economic difficulties and even business collapse to find that at an earlier time certain conditions of economic duress existed.
Evidence was also introduced that less than a year before the July 1992 closing James Sirois along with his brothers signed notes; and guarantees to another bank which contained jury waiver provisions almost identical to the waiver provisions here; also the same law firm representing the plaintiff here represented that other bank.
This last mentioned consideration also argues for a finding of waiver in the cases of Ronald and Steven Sirois. Also as to Ronald Sirois a little over a year and one-half before the July 1992 closing he signed loan documents in favor of the plaintiff with jury waiver provisions. In fact the acknowledgement on his signature on these November 20, 1990 guaranty and mortgage deed papers was taken by the same attorney who now represents these defendants.
Both Ronald and Steven Sirois were partners in either one of these businesses and had been a party to prior loan and other transactions regarding these concerns. It is also interesting to note that at least one of the wives when asked during testimony why they did not bother to read the various documents sent to them said in effect that they relied on their husbands' judgment. It was their business and they were sophisticated businessmen. It is true that James Sirois did the negotiating with the bank but Ronald and Steven Sirois did apparently have some conversation with James Sirois during the course of negotiations.
1993 Closing
The same considerations that apply to the waiver issue in the 1992 closing apply to the 1993 closing. The wives did not even appear at this closing but either signed the operative document at home or had their husbands sign them. James Sirois even testified to the effect that the wives were not present at the CT Page 5964 1993 closing because he was upset that he could not get more than an nine month extension of the loan and Mr. Gehr, a bank representative knew that he was upset. Under these circumstances the court is unable to conclude that the wives, Elaine, Caryl and Susan Sirois and Rolande Ouellette could be said to have waived their right to a jury trial despite the prominent location of the waiver provision. Mr. Ouellette was there at the 1993 closing but for the reasons previously mentioned the court cannot find that he waived his jury trial right by signing the March 31, 1993 letter agreement.
Regarding this 1993 closing for the reasons previously mentioned the court finds a valid waiver as to Ronald, Steven and James Sirois. If anything the reasons to find waiver in their case is stronger. This is the second of the two documents they signed with a waiver provision and although that is not enough, for the reasons previously stated to find waiver in Mr. Ouellette's case, it is enough for the court to do so in the case of these sophisticated business people who ran the business.
In reaching this decision I do not find that Attorney Schmuck specifically advised the men signing the agreement of their jury rights. None of the four defendants remembered him to have done so and James Sirois specifically denies it. Attorney Schmuck's memorandum prepared after the closing does refer to advisement as to legal rights but doesn't specifically mention advisement as to the right of jury trial. Some three years after the event it is difficult for the court to accept that Attorney Schmuck remembered these remarks correctly. Also this view is supported by what the court regards as confusing testimony by this witness. In one portion of the transcript there is some indication the jury right was not specifically discussed but latter in response to a question by the court the witness said he specifically remembered advising the men of the jury waiver provision.
In any event the court does not grant the plaintiff's motion to strike from the jury list as to Elaine Sirois, Susan Sirois, Caryl Sirois and Rolande Ouellette. The court does strike the jury claim a to James Sirois and Ronald Sirois.
Thomas Corradino, Judge